**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **A & R ENGINEERING AND TESTING, INC.,**  Plaintiff,  vs.  **CITY OF HOUSTON**; and  **KEN PAXTON,** in his official capacity as Attorney General of Texas,  Defendants. | Case No.  **VERIFIED COMPLAINT** |

Plaintiff **A & R Engineering and Testing, Inc. ("A&R"),** by and through its undersigned counsel, CAIR LEGAL DEFENSE FUND ("CAIR"), files this Verified Complaint against the City of Houston (the "City") and Ken Paxton (collectively "Defendants"). The Complaint alleges violations of the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

**INTRODUCTION**

1. The First Amendment protects the rights of all speakers to advocate for all viewpoints on issues of public concern. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

1

2. The conflict between Israel and Palestine is a longstanding issue of considerable public concern, both in the United States and internationally, to which politicians, professionals, and the press dedicate considerable energy and resources.

3. In 2017, the State of Texas chose to categorically take Israel's side in this international conflict by adopting Tex. Gov't Code § 2271.001 *et. seq*. This Anti-BDS Law bars the State of Texas from entering into government contracts with companies which boycott Israel.

4. On October 13, 2021, the City of Houston sent A&R a renewal contract to provide engineering services for the City. A&R had been contracting with the City for about 17 years. Section 2.19.1 of the renewal contract required A&R to certify that it "is not currently engaging in, and agrees for the duration of this Agreement not to engage in, the boycott of Israel as defined by Section 808.001 of the Texas Government Code."

5. That same day, A&R refused to sign the contract, stating, "It is my right and duty to boycott Israel and any products of Israel. This policy is against my constitutional right and against International Law."

6. A&R demanded that the City take Section 2.19.1 out of the contract and declined to sign.

7. The City refused and told A&R, "Because this is state law, the refusal to sign the agreement because of the Israel issue means that the City cannot move forward with an agreement with this contractor."

8. Texas's ban on contracting with any boycotter of Israel constitutes viewpoint discrimination that chills constitutionally-protected political advocacy in support of Palestine.

9. This Court should enjoin the City of Houston from offering and/or executing the contract with another company to preserve the status quo of the parties.

10. This Court should also enjoin enforcement of Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause under the First Amendment, thereby permitting Plaintiff to renew its engineering contract with the City.

## PARTIES

11. Plaintiff A&R Engineering and Testing, Inc., is a for-profit corporation providing engineering services. It is incorporated in the state of Texas with its principal place of business in Houston, Texas.

12. Defendant City of Houston is a Texas municipality with a physical address of 901 Bagby, Houston, TX, 77002, and a mailing address of P.O. Box 1562, Houston. TX, 77251.

13. Defendant Ken Paxton is the Attorney General of Texas. The Attorney General's principal office is located at 300 W. 15th Street, Austin, TX 78701. He is responsible for enforcing and defending the constitutionality of Texas law. Defendant Paxton is sued in his official capacity, only.

## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, namely the First and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. § 1983.

15. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

16. This Court has personal jurisdiction over the Defendants because they reside in this district.

17. A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this Judicial District. Venue therefore lies in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

### The Israel – Palestine Conflict is a Fraught Issue of International Importance

18. The relationship between Israel and Palestine is a significant international political conflict. One of the core disputes within that conflict concerns Israel's continuing occupation and settlement of Palestinian territories, including the West Bank and Golan Heights.

19. On December 23, 2016, the United Nations Security Council unanimously (with the United States abstaining) adopted Resolution 2334. The Resolution condemned Israeli settlements in the Occupied Palestinian Territories and reaffirmed that continuing settlements "constitute[e] a flagrant violation under international law and a major obstacle to the achievement of the two-State solution and a just, lasting and comprehensive peace." The Resolution additionally condemned Israeli violence and human rights abuses against Palestinians.

20. A robust international movement seeks to impose economic pressure on Israel to cease its settlement activity in Palestinian Territory. Calling itself "Boycott, Divestment, and Sanctions" or "BDS," the movement seeks the peaceful end of Israeli discrimination against and maltreatment of Palestinians. The BDS movement specifically encourages

economic divestment from institutions that are not in compliance with established international law related to the Israeli occupation of Palestine.

21. The United States has historically discouraged Israeli settlements as "inconsistent with international law." Overall, however, U.S. policy strongly supports Israel, and the U.S. and Israel enjoy close political and economic relationships. These friendly relations have tended to soften or mute the United States' criticism of Israeli settlements. The United States abstained from Resolution 2334 due to its political support of Israel, and previously vetoed a similar U.N. Resolution in February 2011.

22. The merits of all perspectives in the Israel-Palestinian conflict and the U.S.'s respective political positions are robustly and publicly debated by leading politicians, academics, universities, non-profit organizations, businesses, and media organizations in the United States and around the world.

### Texas Passes Anti-Boycott, Divestment, and Sanctions Legislation

23. Because the prevailing political sentiment in the United States favors Israel, many U.S. states, private organizations, and public officials view the Palestinian-led Boycott, Divestment, and Sanctions movement as a threat to U.S.-Israel economic relations and Israel's sovereignty.

24. This political climate has, in recent years, prompted local and state legislatures to consider more than a hundred bills and resolutions aimed at hindering the Boycott, Divestment, and Sanctions movement. At least twenty-four states have enacted "anti-BDS" legislation.

25. Texas is one state to have enacted measures opposed to the Boycott, Divestment, and Sanctions movement. On May 2, 2017, Texas enacted House Bill 89,

codified at Tex. Gov. Code § 2271.001 *et. seq*.  The bill's author, State Representative Phil King, informed the legislature, "the intent of the bill, speaking a little more broadly, is to prohibit someone trying to cause economic harm to the nation of Israel or to the Jews or anyone within the nation of Israel by boycotting, by not doing business with them, by punishing others who do business with them."

26.     The Anti-BDS Law was amended, effective May 17, 2019, by House Bill 793, which excluded certain entities from the prohibitions of the Anti-BDS Law.

27.     Texas law now prohibits all government entities from contracting with any company that boycotts Israel.

28.     Specifically, Tex. Gov. Code § 2271.002 *et. seq*. provides:

    A.     "A governmental entity may not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it:

        i. does not boycott Israel; and

        ii. will not boycott Israel during the term of the contract."

29.     The Anti-BDS Law defines "boycott Israel" to include, "refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory."  Tex. Gov. Code § 808.001 *et. seq*.

30.     The Anti-BDS Law initially defined "company" to include, "a for-profit sole proprietorship, organization, association, corporation, partnership, joint venture, limited partnership, limited liability partnership, or any limited liability company, including a wholly owned subsidiary, majority-owned subsidiary, parent company or affiliate of those entities or

business associations that exist to make a profit." Tex. Gov. Code § 808.001(2). After House Bill 793, the law now "does not include a sole proprietorship. Tex. Gov. Code § 2271.001(2).

31. To comply with this statutory provision, Texas agencies and public entities including school districts have started including language in their boilerplate contracts which bars boycotts of Israel.

### A&R Engineering refuses to sign renewal contract

32. On October 13, 2021, the City of Houston sent A&R a renewal contract to provide engineering services for the City.

33. A&R had been contracting with the City for approximately 17 years.

34. Section 2.19.1 of the renewal contract required A&R to certify that it "is not currently engaging in, and agrees for the duration of this Agreement not to engage in, the boycott of Israel as defined by Section 808.001 of the Texas Government Code."

35. Under Section 4.1 of the renewal contract, the renewal contract was to last three years with up to two additional one-year agreements.

36. On October 13, 2021, A&R refused to sign the contract. Russ Hassouna, the Owner and Executive Vice President of A&R, wrote: "Israel is an occupier of my homeland and it is an Apartheid State. It is my right and duty to boycott Israel and any products of Israel. This policy is against my constitutional right and against International Law. I demand that you take the paragraph about Israel off from the contract. I will send the contract document to my Attorney to advice [sic] me on what legal actions to be pursued."

37. Mike Pezeshki of the City of Houston responded on October 13, 2021, by telling A&R: "I just talked to our attorney, Mr. Arnold Colunga at the City Legal Department, and he advised me that the Section 2.21.1 [sic] 'Anti-Boycott of Israel' is state law and cannot

be removed from your contract. Please let me know if you wish to withdraw A&R Engineering from acquiring a CMT contract from the City by the Close of Business on Wednesday, October 20, 2021."

38. Mr. Hassouna, wrote back on October 13, 2021: "I declined to sign and I stated the reasons."

39. Mr. Hassouna boycotts Israel in his personal capacity.

40. A&R boycotts Israel in its capacity as a corporation. Although A&R's boycott has not materially affected any of its business decisions through the present, A&R would refuse to buy an Israeli-sourced product were the opportunity to otherwise arise.

41. Moreover, even were A&R not boycotting Israel, it would refuse to certify that it would not boycott Israel for the duration of the renewal contract because, by signing, A&R would be compelled to speak in furtherance of a foreign government's interests.

42. But for the renewal contract's certification requirement, based on the Anti-BDS Law, A&R is ready, willing, and able to enter into the contract and perform the agreed-upon engineering services for the City.

## CAUSE OF ACTION

### Violation of
### First and Fourteenth Amendments to the U.S Constitution
### (42 U.S.C. § 1983)

43. Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

44. The First Amendment provides: "Congress shall make no law … abridging the freedom of speech, or of the press."  U.S. CONST. Amend. I.

45. The First Amendment binds the State of Texas pursuant to the incorporation doctrine of the Fourteenth Amendment.

46. Political speech on issues of great national and international importance is central to the purposes of the First Amendment. Speech and advocacy related to the Israel – Palestine conflict is core political speech on a matter of public concern entitled to the highest levels of constitutional protection.

47. Economic boycotts for the purposes of bringing about political change are entrenched in American history, beginning with colonial boycotts on British tea. Later, the Civil Rights Movement relied heavily on boycotts to combat racism and spur societal change. The Supreme Court has recognized that non-violent boycotts intended to advance civil rights constitute "form[s] of speech or conduct that [are] ordinarily entitled to protection under the First and Fourteenth Amendments." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

48. The First Amendment protects the rights of speakers to call for and participate in economic boycotts as a means of amplifying their message. Joining voices together to participate in and call for political boycotts is protected association under the First Amendment.

49. Tex. Gov. Code § 2271.001 *et. seq*. and the "No Boycott of Israel" clause each constitute viewpoint discrimination because they only bar speech and expression against Israel, and not speech or expression in favor of Israel or against Palestine.

50. Tex. Gov. Code § 2271.001 *et. seq*. and the "No Boycott of Israel" clause each constitute content-specific restrictions on speech because they single out boycotts of Israel for disfavored treatment.

51. Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause each constitute speaker-specific restrictions on speech because they single out government contractors who advocate for Palestine and against Israel as specific speakers who warrant disfavored treatment.

52. Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause each impose a prior restraint on speech, by requiring speakers to certify in advance that they do not and will not engage in a boycott of Israel.

53. Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause each constitute impermissible State attempts to impose conditions on an independent contractor on a basis that infringes constitutionally protected freedom of speech.

54. Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause each constitute impermissible State attempts to impose an ideological litmus test or compel speech related to government contractors' political beliefs, associations, and expressions.

55. Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause are each substantially overbroad.

56. Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause are each void for vagueness.

57. Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause operate to chill the exercise of constitutionally protected speech and associations.

58. The Texas Attorney General and the City each lack a compelling or legitimate governmental interest in the enforcement of Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause.

59. Enforcement of Tex. Gov. Code § 2271.001 *et. seq.* and the "No Boycott of Israel" clause does not constitute the least-restrictive means of fulfilling any state interest.

60. Tex. Gov. Code § 2271.001 *et. seq.* is facially unconstitutional under the First Amendment and cannot be enforced against anyone by the Texas Attorney General.

61. Tex. Gov. Code §2271.001 *et. seq.*, as implemented through the "No Boycott of Israel" clause in the renewal contract promulgated by the City, is unconstitutional facially and as applied to Plaintiff.

62. The Western District of Texas has already found the Anti-BDS Law unconstitutional in *Amawi v. Pflugerville Independent School District*, 373 F. Supp. 3d 717 (W.D. Tex. 2019). Although the Fifth Circuit dissolved that case's preliminary injunction upon the enactment of House Bill 793, finding the case moot because the Anti-BDS Law as amended excluded the *Amawi* plaintiffs, *Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020), the Fifth Circuit's opinion did not alter or undermine Judge Pittman's well-reasoned explanation as to why the Anti-BDS Law is unconstitutional.

63. Unlike the plaintiffs in *Amawi*, the as-amended Anti-BDS Law applies to A&R, the Plaintiff in this action.

64. Absent an injunction, Plaintiff will suffer irreparable harm because it will be barred by state law and contract from engaging in protected First Amendment speech and association on a matter of public concern.

65. If Defendants are not enjoined from enforcing Tex. Gov. Code §2271.001 *et. seq.* and from including the "No Boycott of Israel" clause in state contracts, Plaintiff and all advocates for Palestine will be effectively prohibited from entering into any agreement with the State of Texas unless they give up their constitutionally-protected views.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter the following relief:

A. Declare Tex. Gov. Code § 2271.001 *et. seq*. unconstitutional and unenforceable;

B. Issue judgment in Plaintiff's favor and against Defendants on all causes of action alleged under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution;

C. Grant Plaintiff a preliminary and permanent injunction striking the "No Boycott of Israel" clause from any contract the City of Houston;

D. Order the City of Houston to offer Plaintiff a new contract without the "No Boycott of Israel" clause, thereby permitting it to sign and resume providing the City engineering services;

E. Temporarily Restrain the City of Houston from awarding a contract to perform the engineering services described in the renewal contract to another engineering services provider until this Court can determine the constitutionality of the Anti-BDS Law;

F. Enter a preliminary and permanent injunction against Defendants' inclusion of boycott provisions under Tex. Gov. Code § 2271.001 *et. seq*. in any state contract, and against Defendant Attorney General's continuing enforcement of Tex. Gov. Code § 2271.001 *et. seq*.;

G. Declare void any "No Boycott of Israel" clause pursuant to Tex. Gov. Code § 2271.001 *et. seq*. that now exists in any and all contracts between Texas public entities and private companies or persons;

H. Award Plaintiff damages against the City of Houston for all economic harm caused by the City's requirement of a "No Boycott of Israel" in the renewal contract and Plaintiff's resultant inability to sign the renewal contract;

I. Award Plaintiff its reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and,

J. Grant such other and further relief as the Court may deem to be just and proper.

Dated: October 29, 2021

Respectfully submitted,

**JOHN T. FLOYD LAW FIRM**

**/s/ John T. Floyd**
John T. Floyd (TX Bar No. 00790700)
  jfloyd@johntfloyd.com
Chris Choate (TX Bar No. 24045655)
  choate@johntfloyd.com
4900 Woodway Dr., Ste. 725
Houston, TX 77056
Phone: (713) 224-0101
Fax:   (713) 237-1511

**CAIR LEGAL DEFENSE FUND**

Lena F. Masri (D.C. Bar No. 1000019) α
  lmasri@cair.com
Gadeir I. Abbas (VA Bar No. 81161) α *
  gabbas@cair.com
Justin Sadowsky (D.C. Bar No. 977642) α
  jsadowsky@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:   (202) 488-0833

α *SDTX admission application forthcoming*

* *Licensed in VA, not in D.C.*
  *Practice limited to federal matters*

13