**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **A & R ENGINEERING AND TESTING, INC.,** | Case No. 4:21-cv-03577 |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| vs. | |
| **CITY OF HOUSTON**; and | ORAL HEARING REQUESTED |
| **KEN PAXTON,** in his official capacity as Attorney General of Texas, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ..............................................................................2

    A.    A & R is unable to renew its contract with the City of Houston because it contains a provision that requires it to support Israel, pursuant to the Anti-BDS law. ..............................................................................................2

    B.    Texas enacted legislation that prohibits all government entities from entering into contracts with companies that boycott Israel. ............................4

ARGUMENT ........................................................................................................5

I.   Plaintiff is likely to succeed on the merits that the Texas Anti-BDS Law violates the First Amendment. .................................................................5

    C.    Participation in boycotts of Israel constitutes protected speech and expressive conduct. ...............................................................................6

    D.    The Texas Anti-BDS Act imposes a content-based restriction on speech. ...................................................................................................7

    E.    The Texas Anti-BDS Act imposes unconstitutional conditions on government contractors. .......................................................................10

    F.    The Texas Anti-BDS Act violates additional First Amendment doctrines. ...........................................................................................12

    G.    The Texas Anti-BDS Act is not narrowly tailored to fulfill compelling governmental interests. .....................................................13

II.    The remaining preliminary injunction factors weigh in favor of enjoining enforcement of the Texas Anti-BDS Act. ............................................14

RELIEF REQUESTED .......................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Agency for International Development v. Alliance for Open Society International, Inc.,* 133 S. Ct. 2321 (2013) ............................................................................................................ 10, 11

*Amawi v. Pflugerville Independent School District*, 373 F. Supp. 3d 717 (W.D. Tex. 2019) .......... 9

*Arkansas Times LP v. Waldrip*, 988 F.3d 453 (8th Cir. 2021), reh'g en banc granted, opinion vacated (June 10, 2021) ............................................................................................. 10

*Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674–75 (1996)................ 5

*Boos v. Barry*, 485 U.S. 312 (1988) ...................................................................................... 7

*Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280–81 (5th Cir. 2003) .................................... 12

*Coates v. Cincinnati*, 402 U.S. 611. 614 (1971) ..................................................................... 12

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)............................................................................. 14

*Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012) ......................................................... 14

*Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 133 (1992) ................................. 8, 11

*Hoover v Morales,* 164 F.3d 221 (5th Cir. 1998)..................................................................... 4

*Jordahl v. Brnovich*, 336 F. Supp. 3d 1016, 1048 (D. Ariz. 2018) ................................. 4, 7, 11

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 889 (1982)............................................... 5, 6

*O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 720 (1996) .......................................... 9

*Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972)............................................ 7

*Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015).....................................................passim

*Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 822 (1995). ......................... 5

*Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013) ............... 4, 14

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ......................................................... 7

*Whole Woman's Health v. Paxton*, 264 F. Supp. 3d 813 (W.D. Tex. 2017).................................. 4

*Whole Woman's Health v. Paxton*, 264 F. Supp. At 813 (W.D. Tex. 2017) ............................ 13

**Constitutional & Statutes**

Tex. Gov. Code § 2271.002 ........................................................................4, 7, 11

Tex. Gov. Code § 808.001 ...................................................................... 4

Tex. Gov't Code § 2271.001 .....................................................................1, 3

Tex. Gov't Code § 808.001 ...................................................................... 12

Tex. Gov't Code § 808.051 ...................................................................... 8

U.S. CONST. Amend. I ...........................................................................5, 14

## INTRODUCTION

On October 13, 2021, A & R Engineering and Testing, Inc. ("A & R") was unable to renew its contract with the City of Houston because it contains a provision that requires it to certify that it "is not currently engaging in, and agrees for the duration of this Agreement not to engage in, the boycott of Israel as defined by Section 808.001 of the Texas Government Code." A & R has been providing engineering services to the City of Houston for approximately 17 years. But for this provision, A & R is ready, willing, and able to enter into the renewal contract, which was to last three years with up to two additional one-year agreements and perform the agreed-upon engineering services for the City.

The provision, Section 2.19.1 of A & R's renewal contract, is a new provision that did not appear in prior contracts A & R executed with the City of Houston. Rather, the provision appeared for the first time in the current version of the contract pursuant to H.B. 89, codified at Tex. Gov't Code § 2271.001 *et seq.*, "Prohibition on Contracts with Companies Boycotting Israel" (hereinafter the "Texas Anti-BDS Law"), a law that was enacted in May 2017. This Anti-Boycott, Divestment, and Sanctions law aims to suppress Palestinian activism within the state of Texas by prohibiting government contractors from boycotting Israel, in violation of the First Amendment, which bars Texas from using government contracts as a vehicle for content-based discrimination.

And it is not just Plaintiff's position that the Anti-BDS law is unconstitutional. The Western District of Texas has ***already*** found the Anti-BDS Law unconstitutional in *Amawi v. Pflugerville Independent School District*, 373 F. Supp. 3d 717 (W.D. Tex. 2019). And, in that same case, the Western District already balanced the equities and found that individuals similarly situated to A&R are entitled to a preliminary injunction blocking the entire law throughout

the state. Although the Fifth Circuit dissolved that case's preliminary injunction upon the enactment of House Bill 793, finding the case moot because the Anti-BDS Law as amended excluded the *Amawi* plaintiffs, *Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020), the Fifth Circuit's opinion did not alter or undermine Judge Pittman's well-reasoned explanation as to why the Anti-BDS Law is unconstitutional. Unlike the plaintiffs in *Amawi*, the as-amended Anti-BDS Law applies to Plaintiff A & R. *See generally* Hassouna Affidavit (establishing that A&R is a corporation with 10 or more full-time employees and the contract at issue is for more than $100,000).

This Court need only follow the same path as *Amawi* to determine the Anti-BDS Law is unconstitutional and grant the preliminary injunction on the equities.

## FACTUAL BACKGROUND

**A.     A & R is unable to renew its contract with the City of Houston because it contains a provision that requires it to support Israel, pursuant to the Anti-BDS law.**

 On October 13, 2021, the City of Houston sent A&R a renewal contract to provide engineering services for the City. Verified Complaint, Dkt. 1, at ¶ 32. The contract is attached herein as **Exhibit B**. A&R has been contracting with the City for about 17 years. Dkt. 1 at ¶ 33 Section 2.19.1 of the renewal contract required A&R to certify that it "is not currently engaging in, and agrees for the duration of this Agreement not to engage in, the boycott of Israel as defined by Section 808.001 of the Texas Government Code." *Id.* at ¶ 34.

That same day, the Owner and Executive Vice President of A & R, Mr. Hassouna, refused to sign the contract unless Section 2.19.1 was removed from it. *Id.* at ¶ 36. He wrote: "Israel is an occupier of my homeland and it is an Apartheid State. It is my right and duty to

boycott Israel and any products of Israel. This policy is against my constitutional right and against International Law. I demand that you take the paragraph about Israel off from the contract. I will send the contract document to my Attorney to advice [sic] me on what legal actions to be pursued." *Id.* A & R boycotts Israel in its capacity as a corporation and Mr. Hassouna boycotts Israel in his personal capacity. *Id.* at ¶¶ 39-40.

Mike Pezeshki of the City of Houston responded on October 13, 2021, by telling A & R: "I just talked to our attorney, Mr. Arnold Colunga at the City Legal Department, and he advised me that the Section 2.21.1 [sic] 'Anti-Boycott of Israel' is state law and cannot be removed from your contract. Please let me know if you wish to withdraw A&R Engineering from acquiring a CMT contract from the City by the Close of Business on Wednesday, October 20, 2021." *Id.* at ¶ 37. Mr. Hassouna, wrote back on October 13, 2021: "I declined to sign and I stated the reasons." *Id.* at ¶ 38.

Although A & R's boycott has not materially affected any of its business decisions through the present, A&R would refuse to buy an Israeli-sourced product were the opportunity to otherwise arise. *Id.* at ¶ 40. Moreover, even if A & R was not boycotting Israel, it would refuse to certify that it would not boycott Israel for the duration of the renewal contract because, by signing, A & R would be compelled to speak in furtherance of a foreign government's interests. *Id.* at ¶ 41. But for the renewal contract's certification requirement, based on the Anti-BDS Law, A&R is ready, willing, and able to enter into the contract and perform the agreed-upon engineering services for the City. *Id.* at ¶ 42.

**B.     Texas enacted legislation that prohibits all government entities from entering into contracts with companies that boycott Israel.**

The relationship between Israel and Palestine is an internationally significant political conflict. The merits of all perspectives on Israel and Palestine, including the United States' related political actions, are robustly and publicly debated by governments, politicians, academics, non-profit organizations, businesses, and media institutions in the United States and around the world. The conflict between Israel and Palestine is a longstanding issue of considerable public concern. *See generally Jordahl v. Brnovich*, 336 F. Supp. 3d 1016, 1048 (D. Ariz. 2018) ("[A]ctions taken by Israel in relation to Palestine are matters of much political and public debate.").

In recent years, public officials throughout the United States have advanced measures to penalize and suppress boycott, divestment, and sanctions activity. In May 2017, Texas enacted H.B. 89, codified at Tex. Gov't Code § 2271.001 *et seq*. (the "Act" or the "Anti-BDS Act"). The Texas Anti-BDS Law was amended, effective May 17, 2019, by House Bill 793, which excluded certain entities from the prohibitions of the Anti-BDS Law. The Act now prohibits all government entities from entering into contracts with any company that boycotts Israel. Specifically, Tex. Gov't Code § 2271.002(b) provides:

> A governmental entity may not enter into a contract with a company for goods or services unless the contract contains a written verification from the company that it:
>
> > (1)   does not boycott Israel; and
> >
> > (2)   will not boycott Israel during the term of the contract.

The Texas Anti-BDS Law defines "boycott Israel" to mean, "refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict harm on, or limit commercial relations specifically with Israel, or with a

4

person or entity doing business in Israel or in an Israeli-controlled territory." Tex. Gov't Code § 808.001. A & R is a company within the meaning of the Anti-BDS Act. Tex. Gov't Code § 808.001. *See generally* Hassouna Affidavit; Tex. Govtt. Code § 2271.002(a). The Attorney General of Texas is tasked with enforcing the Act. Tex. Gov't Code § 808.001. To comply with this statutory provision, Texas agencies and public entities have started including language in their boilerplate contracts that bars boycotts of Israel.

## ARGUMENT

A plaintiff seeking a preliminary injunction must establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Whole Woman's Health v. Paxton*, 264 F. Supp. 3d 813, 818 (W.D. Tex. 2017) (quoting *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013) (quoting *Hoover v Morales,* 164 F.3d 221, 224 (5th Cir. 1998)). When a "challenged law is incompatible with the First Amendment," judicial intervention to protect First Amendment liberties is "always in the public interest." *Id.* at 538, 539.

### I.  Plaintiff is likely to succeed on the merits that the Texas Anti-BDS Law violates the First Amendment.

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. Amend. I. The First Amendment equally binds the State of Texas through the incorporation doctrine of the Fourteenth Amendment. *See, e.g.*, *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 822 (1995). State governments have "no power to restrict expression because of its message, its ideas, its subject

matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). Government contractors "are constitutionally protected from dismissal for refusing to take an oath regarding their political affiliation." *See Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674–75 (1996).

### C.  Participation in boycotts of Israel constitutes protected speech and expressive conduct.

The founding story of America, taught to elementary school students nationwide, begins with colonial boycotts protesting British taxes on tea. Boycotts have served critical expressive purposes at other times in American history. During the Civil Rights Movement, black citizens in Mississippi "presented white elected officials with a list of particular demands for racial equality and integration." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 889 (1982). When those demands were not satisfied, the NAACP called for a complete boycott of the area's white merchants. *Id.* "The boycott was supported by speeches and nonviolent picketing. Participants repeatedly encouraged others to join in its cause." *Id.* at 907. In response, white merchants sued boycott participants to enjoin future boycotts and recover business losses. *Id.* at 889-893.

The Supreme Court in *Claiborne* recognized that non-violent boycotts constitute "form[s] of speech or conduct that [are] ordinarily entitled to protection under the First and Fourteenth Amendments." *Id.* at 907, 915. The Supreme Court held that a State's "broad power to regulate economic activity" simply does not extend to "prohibit[ing] peaceful political activity such as that found in [a] boycott" which expresses concern on critical public issues and showcases a desire for self-government. *Id.* at 913. Such activity "rest[s] on the highest rung of the hierarchy of First Amendment values." *Id.* (internal citation omitted).

Beyond *Amawi*, other federal courts have relied on *Claiborne* to conclude that politically-motivated boycotts of Israel are fully protected expressive activity. "Collective boycotting activities undertaken to achieve social, political or economic ends is conduct that is protected by the First Amendment." *Jordahl*, 336 F. Supp. 3d at 1041 (D. Ariz. 2018) (enjoining Arizona anti-BDS law). Such protests seek to band individuals together "to express, collectively, their dissatisfaction with Israel and to influence governmental action…[They] and others participating in this boycott of Israel seek to amplify their voices to influence change, as did the boycotters in *Claiborne*." *Koontz,* 283 F. Supp. 3d at 1022 (enjoining Kansas anti-BDS law).

Plaintiff A & R engages in protected First Amendment activity when it makes economic decisions in support of peaceful efforts to impose economic pressure on Israel, with the goal of making Israel recognize Palestinians' dignity and human rights. The Texas requirement that state contracts must include a "No Boycott of Israel" clause, as enforced by the Texas Attorney General and implemented by the City of Houston, eviscerates A & R's right to engage in protected speech and expressive conduct. As such, the Anti-BDS law must be struck as unconstitutional.

### D.     The Texas Anti-BDS Act imposes a content-based restriction on speech.

A law is content-based, and presumptively unconstitutional, if "the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "A speech regulation is content-based if the law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2231. "Any restriction on expressive activity because of its content would completely undercut the profound national commitment to the principle that

debate on public issues should be uninhibited, robust, and wide-open." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) (ordinance distinguishing between labor and non-labor picketing facially unconstitutional).

The Texas Anti-BDS Act is content-based because it singles out those who participate in boycotts *against Israel* for disfavored treatment. *See* Tex. Gov't Code § 2271.002 (requiring certifications that contractors do not and will not boycott Israel). Texas's specification of Israel is akin to the Supreme Court's invalidation of a D.C. protest ordinance as unconstitutionally content-based: "Whether individuals may picket in front of a foreign embassy depends entirely upon whether their picket signs are critical of the foreign government or not." *Boos v. Barry*, 485 U.S. 312, 319 (1988). Likewise in Texas, whether contractors may protest actions in the Middle East depends entirely upon whether their boycott is critical *of Israel*, as opposed to any other government, company, or cause. Texas contractors remain free, for example, to economically boycott Palestine – or Syria, Saudi Arabia, Iraq, or Iran. They also remain free to boycott any U.S. state, company, or cause. Texas only targets *anti-Israel* boycotts. Such a content distinction triggers First Amendment strict scrutiny.

In addition, the Act imposes an impermissible speaker-based restriction on speech, which the Supreme Court has recognized as a form of content discrimination. "Because speech restrictions based on the identity of the speaker are all too often simply a means to control content," the Supreme Court has "insisted that laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Reed*, 135 S. Ct. at 2230 (cleaned up).

The Texas Anti-BDS Act is speaker-based because it only bars Texas *contractors* from boycotting Israel, while leaving unregulated all other private speakers in Texas who boycott

Israel. Residents and businesses who do not contract with the State of Texas may still boycott Israel, without censure, and regardless of their boycotts' effects on the Texas economy. Moreover, it only bars Texas contractors from boycotting Israel, and not any other country, including the United States. Meanwhile, the Act instructs the Texas comptroller to subjectively survey "publicly available information" in order to "prepare and maintain, and provide to each state governmental entity, a list of all companies that boycott Israel." Tex. Gov't Code § 808.051. Texas is thus singling out a specific list of speakers for government censure based solely on a bureaucrat's discretionary determination that the speaker boycotts Israel. "The First Amendment prohibits the vesting of such unbridled discretion in a government official." *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 133 (1992). It is plain that Texas's "speaker preference reflects a content preference" – i.e. official state support for Israel – and is therefore facially invalid. *See Reed*, 135 S. Ct. at 2230 (citations omitted).

Similarly, the District of Kansas examined comparable legislative history, concluding that Kansas's "goal is to undermine the message of those participating in a boycott of Israel. This is either viewpoint discrimination against the opinion that Israel mistreats Palestinians or subject matter discrimination on the topic of Israel. Both are impermissible goals under the First Amendment." *Koontz*, 283 F. Supp. 3d at 1022.

The 8th Circuit Court enjoined nearly identical language. In that case, the Circuit Court held that "supporting or promoting boycotts of Israel *is* constitutionally protected under *Claiborne*," and because the Act prohibited a contractor from engaging in boycott activity outside the scope of the contractual relationship "on its own time and dime," it was a violation of the First Amendment. *Arkansas Times LP v. Waldrip*, 988 F.3d 453, 467 (8th Cir. 2021), reh'g en banc granted, opinion vacated (June 10, 2021) (quoting *Agency for Int'l Dev. v. Alliance for*

*Open Soc. Int'l, Inc.*, 1333 S. Ct. 2321 (2013)). As a facially content-based and speaker-based restriction on Texas contractors who support anti-Israel boycotts "on [their] own time and dime," the Texas Anti-BDS Act must be enjoined.

> ### E.     The Texas Anti-BDS Act imposes unconstitutional conditions on government contractors.

The Supreme Court's "modern unconstitutional conditions doctrine holds that the government may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech even if he has no entitlement to that benefit." *Umbehr*, 518 U.S. at 674-75 (cleaned up). A state government cannot "coerce support" for its preferred "political association[s]" by subjecting government contractors to "direct and specific abridgement[s] of First Amendment rights." *O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 720-21 (1996). Although "governmental entities make a wide range of decisions in the course of contracting for goods and services," "it does not follow that this discretion can be exercised to impose conditions on expressing, or not expressing, specific political views." *Id.* at 724-26. The Texas Anti-BDS Act and its implementation through mandatory "No Boycott of Israel" clauses each impose unconstitutional conditions. They require government contractors to cease their protected political boycotts of Israel in order to engage in utterly unrelated transactions with Texas. *See Agency for International Development v. Alliance for Open Society International, Inc.,* 1333 S. Ct. 2321, 2328 (2013) (holding that unconstitutional conditions "seek to leverage [state] funding to regulate speech outside the contours of the program itself").

For approximately seventeen years, Plaintiff A & R has contracted with the City of Houston to provide engineering services. *See* Verified Complaint, Dkt. 1 at 7. The *only* reason A & R is no longer providing those services is because of its ethical refusal to sign a Texas-

mandated "No Boycott of Israel" clause. *See id.* at 8. A & R's Owner and Executive Vice President, Russ Hassouna, refused to sign the anti-boycott provision because "Israel is an occupier of my homeland and it is an Apartheid State. It is my right and duty to boycott Israel and any products of Israel." *See id.* at 7.

The City of Houston cannot identify a connection between engineering services and restricting political speech, either. Federal courts in Arizona and Kansas agree. The court in *Jordahl* noted the State's heavy "burden in justifying a restriction of speech or expressive conduct" that has "widespread prophylactic impact" across all employees or contractors. 336 F. Supp. 3d at 1045. Such universal restrictions have a high risk of "chill[ing] potential speech before it happens." *See id.* In Arizona, the court concluded that speech regarding the Israel – Palestine conflict is a matter of public concern, for which "[t]here is no plausible relationship" between the execution of state contracts and a company's "avowal to refrain from engaging in a boycott of Israel." *Id.* at 16.

Similarly, the District of Kansas has "enjoin[ed] defendant from requiring any independent contractor to sign a certification that they are not participating in a boycott of Israel as a condition of contracting with the State of Kansas." *Koontz*, 283 F. Supp. 3d at 1027. "States cannot retaliate or impose conditions on an independent contractor on a basis that infringes his constitutionally protected freedom of speech." *Id.* at 1020 (cleaned up).

Texas's version of the enjoined Kansas and Arizona anti-BDS laws should suffer the same fate. The First Amendment does not tolerate Texas's blacklist of government contractors who boycott Israel. Tex. Gov't Code § 2271.001 *et seq.* must be enjoined as facially unconstitutional.

11

**F.      The Texas Anti-BDS Act violates additional First Amendment doctrines.**

Texas's official discrimination against protected advocacy and expression is so egregious, it violates numerous other First Amendment doctrines beyond the content-based, speaker-based, and unconstitutional condition restrictions detailed above. Plaintiff briefly sets forth the basis for two additional violations below, regarding prior restraints and void for vagueness.

*Prior Restraint.* The Texas Anti-BDS Act and its mandatory "No Boycott of Israel" clauses constitute prior restraints on protected First Amendment activity. Contractors must vow that they "will not boycott Israel during the term of the contract."  Tex. Gov't Code § 2271.002. This forward-looking promise reveals that the purpose and effect of Texas's "No Boycott of Israel" provisions is to "weed out disfavored expression before it occurs" by preemptively limiting government contractors' advocacy and speech. *See Forsyth*, 505 U.S. at 130. A prior restraint, "while not *per se* unconstitutional, bears a heavy presumption against its constitutional validity." *E.g., Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280–81 (5th Cir. 2003).

*Void for Vagueness*. Laws are unconstitutionally vague where "men of common intelligence must necessarily guess at [their] meaning." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (internal citation omitted). It is by no means clear what exact activities the State of Texas intends to prohibit through its anti-boycott-of-Israel provisions. Texas's definition of "boycott" encompasses more than just economic conduct "refusing to deal" with Israel. *See* Tex. Gov't Code § 808.001. The definition also contains a catch-all against "otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an

12

Israeli-controlled territory." Tex. Gov't Code § 808.001. Such other actions "intended to penalize" or "inflict economic harm on" Israel easily encompasses pure political speech about Israel's maltreatment of Palestinians, if done with the intent to persuade others to economically boycott Israel. They readily extend to *any* activity done in response to the Boycott, Divestment, and Sanctions call. The vagueness of the Anti-BDS Act and its mandated "No Boycott of Israel" clause operates to chill free speech, expression, and association. It must be enjoined.

### G.     The Texas Anti-BDS Act is not narrowly tailored to fulfill compelling governmental interests.

The multitude of First Amendment ills inflicted by the Texas Anti-BDS Act and its mandatory "No Boycott of Israel" clause can only be overcome if Texas satisfies strict scrutiny. *See, e.g.*, *Reed*, 135 S. Ct. at 2226. Strict scrutiny requires Texas to prove that its speech restrictions "are narrowly tailored to serve compelling state interests." *Id.*  The Attorney General and the City of Houston cannot meet that standard.

It is black-letter First Amendment doctrine that a "law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on [protected] speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Reed*, 135 S. Ct. at 2232 (internal citations omitted). Whatever interest the Attorney General may come up with to justify this Act – such as promoting the Texas economy, prohibiting discrimination against a United States ally, or the ilk – it is clear the Act's efforts to achieve that interest are woefully aligned with its stated goals. No *post hoc* interest will be able to overcome the disconnect in Texas's political decision to single out *only* government contractors for mandatory support of a *single* foreign country. Texas's unconstitutional purpose to support Israel and silence advocacy for Palestine cannot be written around.

13

\* \* \*

Plaintiff A and R is likely to succeed on the merits that the Texas Anti-BDS Act facially violates the First Amendment.

## II.   The remaining preliminary injunction factors weigh in favor of enjoining enforcement of the Texas Anti-BDS Act.

After demonstrating a likelihood of success on the merits, a party seeking a preliminary injunction must show "(a) a substantial threat of irreparable injury if the injunction is not issued, (b) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (c) that the grant of an injunction will not disserve the public interest." *Texans for Free Enter.*, 732 F.3d at 537. Because each factor clearly supports Plaintiff A and R, an injunction against enforcement of the Texas Anti-BDS Act and its mandated "No Boycott of Israel" clause is appropriate.

***Irreparable Harm.*** The Fifth Circuit has repeatedly held that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Id.* At 539 (collecting cases and relying on *Elrod v.* Burns, 427 U.S. 347, 373 (1976) (plurality opinion). But for the Texas Anti-BDS law, A & R is ready, willing, and able to enter into the renewal contract, which was to last three years with up to two additional one-year agreements, and perform the agreed-upon engineering services for the City. A & R has a longstanding relationship with the City of Houston, whereby it has provided the City with engineering services for approximately 17 years. Absent relief from this Court, Plaintiff will be barred from resuming this contractual arrangement with the City of Houston. This constitutes irreparable harm that warrants an injunction striking the "No Boycott of Israel" clause and declaring the Act void.

14

***Balance of the Equities***. The scales of equity sharply tip in favor of upholding fundamental First Amendment values. *See, e.g., Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2008). Texas is thus unlikely to be able "to articulate the harm it will suffer if enjoined from enforcing the relevant code provision." *Texans for Free Enter.*, 732 F.3d at 539. Meanwhile, Plaintiff and all government contractors affected by the Act are suffering lost income due to the State's restrictions on their constitutionally-protected speech. Abandoning enforcement of the "No Boycott of Israel" clause cannot impose a constitutionally cognizable burden on Defendants because it is an impermissible government action in the first place.

***Public Interest***. "Injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter.*, 732 F.3d at 539 (citation omitted). Permitting Plaintiff A & R to renew its contract with the "No Boycott of Israel" paragraph stricken serves the "public interest in upholding free speech and association rights." *E.g. Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012).

## RELIEF REQUESTED

Pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution, the Court should declare Tex. Gov. Code § 2271.001 *et seq.* unconstitutional. The Court should enjoin the Attorney General from enforcing the Act, of any "No Boycott of Israel" terms that now exist in any state contract. The Court should further strike the "No Boycott of Israel" clause from Plaintiff A and R's proffered renewal contract with the City of Houston, thereby permitting the company to sign and continue providing engineering services to the City.

Dated: November 15, 2021

Respectfully submitted,

15

**JOHN T. FLOYD LAW FIRM**

/s/ John T. Floyd
John T. Floyd (TX Bar No. 00790700)
  jfloyd@johntfloyd.com
Christopher M. Choate (TX Bar No. 24045655)
  choate@johntfloyd.com
4900 Woodway Dr., Ste. 725
Houston, TX 77056
Phone: (713) 224-0101
Fax:   (713) 237-1511

**CAIR LEGAL DEFENSE FUND**

Lena F. Masri (D.C. Bar No. 1000019) α
  lmasri@cair.com
Gadeir I. Abbas (VA Bar No. 81161) α *
  gabbas@cair.com
Justin Sadowsky (D.C. Bar No. 977642) α
  jsadowsky@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:   (202) 488-0833

α *SDTX admission application forthcoming*

\* *Licensed in VA, not in D.C.*
  *Practice limited to federal matters*

16

**Exhibit 1 - Hassouna Affidavit**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

A & R ENGINEERING AND TESTING, INC.,

      Plaintiff,

    vs.

CITY OF HOUSTON; and

KEN PAXTON, in his official capacity as
Attorney General of Texas,

      Defendants.

Case No.

**RULE 65(b)(1)(B) DECLARATION OF
RASMY HASSOUNA**

I, Rasmy Hassouna, swear under the penalty of perjury that the following facts are true to the best of my knowledge, information, and belief:

1. I am the Owner and Executive Vice President of A & R Engineering and Testing, Inc., ("A & R").

2. A & R employs more than 10 full-time employees.

3. The renewal contract described in the Complaint has a value of more than $100,000.

4. The payee of the Contract is the City of Houston, and, to the best of my knowledge, payment is to be paid wholly or partly from public funds.

I swear under the penalty of perjury that the foregoing is true and correct.

Rasmy Hassouna

2