**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **A & R ENGINEERING AND TESTING, INC.,**<br> **Plaintiff,**<br><br>**v.**<br><br>**CITY OF HOUSTON, and KEN PAXTON, in his official capacity as Attorney General of Texas,**<br> **Defendants.** | **Case No. 4:21-cv-03577** |

**DEFENDANT KEN PAXTON, ATTORNEY GENERAL OF TEXAS'S**
**MOTION TO DISMISS UNDER RULE 12(B)(1) AND RULE 12(B)(6)**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

MURTAZA F. SUTARWALLA
Deputy Attorney General for Legal Counsel

JOSHUA R. GODBEY
Division Chief
Financial Litigation and Charitable Trusts Division

*/s/ Wm. Sumner Macdaniel*
WILLIAM SUMNER MACDANIEL
Assistant Attorney General
State Bar No. 24093904
SD Bar No. 3293076
Tel: (512) 936-1862
William.Macdaniel@oag.texas.gov

CYNTHIA A. MORALES
Attorney-in-Charge
Assistant Attorney General
State Bar No. 14417420
SD Bar No. 23091

Tel: (512) 475-4470
Cynthia.Morales@oag.texas.gov

Financial Litigation and Charitable Trusts Division
Office of the Attorney General
P.O. Box 12548/Mail Stop 017
Austin, TX 78711-2548
Division Fax: (512) 477-2348

*Counsel representing Ken Paxton,*
*In his official capacity as Attorney General of Texas*

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. iii

INDEX OF AUTHORITIES .......................................................................................... iv

DEFENDANT KEN PAXTON, ATTORNEY GENERAL OF TEXAS'S MOTION TO
DISMISS UNDER RULE 12(B)(1) AND RULE 12(B)(6) ........................................ 1

BACKGROUND .............................................................................................................. 2

    I.   The Texas Legislature enacts Chapter 2271 ....................................................... 2

    II.   A&R refuses to sign its contract with the City of Houston .............................. 2

    III.  A&R's allegations .............................................................................................. 3

STANDARD OF REVIEW ............................................................................................ 3

    I.   Rule 12(b)(1) – lack of subject matter jurisdiction .......................................... 3

    II.   Rule 12(b)(6) – failure to state a claim ............................................................. 4

ARGUMENT AND AUTHORITIES ............................................................................ 4

    I.   A&R lacks standing to seek any relief involving other contracts ...................... 5

    II.   A&R lacks standing to bring vagueness and overbreadth claims ...................... 6

    III.  A&R fails to state a cognizable First Amendment claim ................................. 8

        A.   The Israel clause validly regulates discriminatory conduct, not speech. ..................................... 9

        B.   The Israel clause does not compel speech. ........................................... 11

        C.   Even if the Israel clause regulates expressive conduct, it remains permissible. ........................ 12

        D.   A&R's reliance on *Claiborne* is misplaced. ..................................... 14

        E.   The Israel clause is a restriction on government speech. ........................... 17

    IV.  A&R fails to state a cognizable vagueness claim ........................................... 17

    V.   A&R fails to state a cognizable overbreadth claim ......................................... 19

CONCLUSION .............................................................................................................. 20

CERTIFICATE OF CONFERENCE AND CERTIFICATION REGARDING 12(B)(6)
MOTION ........................................................................................................................ 22

CERTIFICATE OF SERVICE .................................................................................... 22

# INDEX OF AUTHORITIES

Cases                                                                                    Page(s)

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013) ................................................................................. 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 4

*Athenaeum v. Nat'l Lawyers Guild, Inc.*,
   No. 653668/16, 2017 WL 1232523 (N.Y. Sup. Ct. Mar. 30, 2017)......................... 13

*Barber v. Bryant*,
   860 F.3d 345 (5th Cir. 2017)..................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 4

*Bob Jones Univ. v. United States*,
   461 U.S. 574 (1983)................................................................................. 14

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973)............................................................................. 19, 20

*Cole v. Richardson*,
   405 U.S. 676 (1972)................................................................................. 12

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
   473 U.S. 788 (1985) ............................................................................... 9

*Grove City College v. Bell*,
   465 U.S. 555 (1984)................................................................................. 12

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984)................................................................................... 9

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
   515 U.S. 557 (1995)................................................................................. 9

*Int'l Longshoremen's Ass'n v. Allied Int'l, Inc.*,
   456 U.S. 212 (1982)................................................................................. 16

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ............................................................................. 19

*Jordahl v. Brnovich*,
   Case No. 18-16896, Dkt No. 26 (9th Cir. Oct. 31, 2018) ................................. 15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................. 3, 4

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) .............................................................................. 14, 15

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) ................................................................... 6, 7

*NCAA v. Smith*,
    525 U.S. 459 (1999) ..................................................................................... 12

*Pleasant Grove City, Utah v. Summum*,
    555 U.S. 460 (2009) ..................................................................................... 17

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) ........................................................................ 4

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ..................................................................................... 14

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ............................................................................... passim

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ..................................................................................... 17

*Seals v. McBee*,
    898 F.3d 587 (5th Cir. 2018) ........................................................................ 6

*Serv. Emps. Int'l Union, Local 5 v. City of Houston*,
    595 F.3d 588 (5th Cir. 2010) ........................................................................ 7

*Spence v. Washington*,
    418 U.S. 405 (1974) ....................................................................................... 8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................................... 4

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ......................................................................................... 6

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) .............................................................................. 4, 8

*United States v. Kaluza*,
    780 F.3d 647 (5th Cir. 2015) ...................................................................... 19

*United States v. O'Brien*,
   391 U.S. 367 (1968) ........................................................................ 8, 13, 20

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) .............................................................................. 6

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982) ........................................................................ 17, 18

*Vt. Agency of Nat. Res v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000) ............................................................................... 6

*Walker v. Tex. Division, Sons of Confederate Veterans, Inc.*,
   135 S. Ct. 2239 (2015) .......................................................................... 17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................... 4

*Wisconsin v. Mitchell*,
   508 U.S. 476 (1993) .............................................................................. 14

*Yates v. United States*,
   574 U.S. 528 (2015) .............................................................................. 19

<u>Statutes</u>

10 U.S.C. § 983 ........................................................................... 9, 10, 12, 13

29 U.S.C. § 151 ..................................................................................... 16

42 U.S.C. § 2000e .................................................................................. 14

Tex. Gov't Code § 2271.001 ...................................................................... 19

Tex. Gov't Code § 2271.001(1) ................................................................... 7

Tex. Gov't Code § 2271.001(2) ................................................................... 2

Tex. Gov't Code § 2271.002 .................................................................... 1, 2

Tex. Gov't Code § 808.001 ........................................................................ 2

Tex. Gov't Code § 808.001(1) ................................................................ 7, 18

Tex. Gov't Code § 808.001(2) ................................................................... 2

Tex. Gov't Code ch. 2270 ......................................................................... 2

Tex. Gov't Code ch. 2271 ................................................................... passim

Rules

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 4

Other Authorities

H.J. of Tex., 85th Leg., R.S. (2017) ......................................................................... 2

House Comm. on State Affairs, Bill Analysis,
   Tex. H.B. 89, 85th Leg., R.S. (2017) ................................................................ 2

S.J. of Tex., H.B. 89, 85th Leg., R.S. (2017) ........................................................... 2

Senate Comm. on Bus. And Commerce, Bill Analysis
   Tex. H.B. 89, 85th Leg., R.S. (2017) ................................................................ 2

Tex. H.B. 4170, 86th Leg., R.S. (2019) ................................................................... 2

Tex. H.B. 89, 85th Leg., R.S. (2017) ....................................................................... 2

U.S. Const. amend. I ...................................................................................... passim

U.S. Const. amend. XIV ............................................................................... 3, 14, 15

U.S. Const. art. III .......................................................................................... 3, 4, 6

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **A & R ENGINEERING AND TESTING, INC.,**<br><br>  **Plaintiff,**<br><br>**v.**<br><br>**CITY OF HOUSTON, and KEN PAXTON, in his official capacity as Attorney General of Texas,**<br><br>  **Defendants.** | **Case No. 4:21-cv-03577** |

**DEFENDANT KEN PAXTON, ATTORNEY GENERAL OF TEXAS'S**
**MOTION TO DISMISS UNDER RULE 12(B)(1) AND RULE 12(B)(6)**

Plaintiff A & R Engineering and Testing, Inc. challenges an anti-discrimination law prohibiting state entities from contracting with companies that boycott the State of Israel. ("Chapter 2271")  *See* Tex. Gov't Code ch. 2271. Chapter 2271 requires companies that contract with state entities to certify that they are not currently boycotting Israel and will not boycott Israel for the term of their contract ("Israel clause"). *Id*. § 2271.002. A&R alleges that the law violates the First Amendment. [Dkt. 1]. But the company's primary First Amendment claims depend on the premise that choosing not to purchase certain products, absent explanatory speech, is constitutionally protected. Because that premise is wrong, the company's claims fail.

## BACKGROUND

### I.        The Texas Legislature enacts Chapter 2271

The Texas Legislature enacted Chapter 2271 in 2017 by wide bipartisan margins.[1] Texas aims to "prevent taxpayer resources from  supporting businesses which work to isolate Israel from global trade," because "Israel is a key ally and trading partner of the United States and Texas." *See* House Comm. on State Affairs, Bill Analysis, Tex. H.B. 89, 85th Leg., R.S. (2017); *see also* Senate Comm. on Bus. & Commerce, Bill Analysis, Tex. H.B. 89, 85th Leg., R.S. (2017). To combat these "discriminatory practices," Texas does not contract with a company for goods or services if that company refuses to deal with, terminates business activities with, or takes other actions intended to penalize, inflict economic harm on, or limit commercial relations with Israel (or someone doing business with Israel). Tex. Gov't Code §§ 808.001 & 2271.002. Texas does not, however, consider business actions taken "for ordinary business purposes" to be a boycott. *Id.*§ 808.001.

Chapter 2271 applies to most types of business organizations except for sole proprietorships. *Id*. § 2271.001(2); § 808.001(2). The certification requirement applies only to contracts that are "between a governmental entity and a company with 10 or more full-time employees" that "has a value of $100,000 or more that is to be paid wholly or partly from public funds[.]" *Id*. § 2271.002.

### II.        A&R refuses to sign its contract with the City of Houston

A&R is a for-profit corporation that has previously contracted with the City of Houston to provide engineering services. [Dkt. 1 ¶¶ 11, 33]. In October 2021, the City of Houston sent A&R

---

[1] The law was passed unanimously in the House, and 26-5 in the Senate. *See* H.B. 89, S.J. of Tex.., 85th Leg., R.S. 1332 (2017); H.J. of Tex., 85th Leg. R.S. 1749–50 (2017). It was initially codified as chapter 2270 in the Texas Government Code. The Texas Legislature redesignated it as Chapter 2271 in 2019. *See* H.B. 4170, 86th Leg., R.S. 158–59 (2019).

2

a renewal contract that included a certification, as required by Chapter 2271, that A&R "is not currently engaging in, and agrees for the duration of the [contract] not to engage in, the boycott of Israel[.]" *Id*. ¶ 34. A&R refused to sign the renewal contract and demanded that the Israel clause be stricken. *Id*. ¶ 36.

The owner and executive vice president of A&R emailed the City, stating: "Israel is . . . an Apartheid State" and that it is A&R's "right and duty to boycott Israel and any products of Israel." *Id*. A&R's stance regarding any boycott of Israel "has not materially affected any of its business decisions" when this lawsuit was filed but it "would refuse to buy an Israeli-sourced product were the opportunity to otherwise arise." *Id*. ¶ 40.

### III.    A&R's allegations

A&R filed suit against the City and Attorney General Ken Paxton, alleging that Chapter 2271 violates the First Amendment. A&R advances multiple First Amendment theories, arguing that the law: (1) constitutes viewpoint, content, and speaker discrimination, (2) constitutes prior restraint, (3) imposes unconstitutional conditions on government contractors, (4) compels A&R's speech, (5) is substantially overbroad; and (6) chills freedom of association. *Id*. ¶¶ 49–55, 57. A&R further argues that Chapter 2271 is unconstitutionally vague under the Fourteenth Amendment. *Id*. ¶ 56. These theories, however, depend on the premise that an economic boycott—the act of choosing not to purchase certain products—is either speech or expressive conduct. Because it is neither, the company's claims fail.

### STANDARD OF REVIEW

### I.    Rule 12(b)(1) – lack of subject matter jurisdiction

A complaint must be dismissed if a court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III of the Constitution requires a plaintiff to have standing before a federal court may adjudicate the case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). A plaintiff

has Article III standing if it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61). The plaintiff bears the burden of establishing these elements. *Id*. A plaintiff must establish standing for every claim and every form of relief. *Town of Chester, N.Y. v. Laroe Estates, Inc*., 137 S. Ct. 1645, 1650 (2017).

These requirements are even more exacting when a plaintiff seeks a preliminary injunction; there must be a "clear showing" that the plaintiff has standing to maintain a preliminary injunction. *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

## II.      Rule 12(b)(6) – failure to state a claim

A complaint must be dismissed if the plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

## ARGUMENT AND AUTHORITIES

A&R's claims should be dismissed for several reasons. First, A&R seeks greatly overbroad relief. A&R's injury is the loss of a single contract with the City of Houston. Yet, it asks this Court to invalidate the Israel clause in all contracts and to prohibit Chapter 2271's enforcement *statewide*.

4

But other contracts to which A&R is not a party that contain an Israel clause do not injure A&R, nor would enjoining their enforcement statewide redress A&R's injury. Second, A&R lacks standing to make any vagueness or overbreadth claims because the company has shown no injury under the specific provisions of Chapter 2271 that it alleges are vague and overbroad. Third, A&R's First Amendment claims fail because they depend on the premise that the act of choosing not to purchase a product, without more, is speech or expressive conduct. But that premise is wrong. While speech *accompanying* a boycott may be protected, the mere act of not purchasing a product is not—because it is conduct, not speech.

## I.    A&R lacks standing to seek any relief involving other contracts

A&R's injury is the loss of a single contract with the City of Houston. Yet, it requests relief that would enjoin every Israel clause in every contract issued by a Texas governmental entity. A&R lacks standing to seek that relief because these other contracts do not injure A&R, and an injunction affecting them will not redress the company's injury.

Here, A&R seeks statewide relief on behalf of all state contractors in Texas who are not before the Court. Specifically, it seeks:

- An injunction "striking the 'No Boycott of Israel' clause from *any* contract [with] the City of Houston." [Dkt. 1 at 12] (emphasis added).
- An injunction "against Defendants' inclusion of boycott provisions under [Chapter 2271] *in any state contract*, and against Defendant Attorney General's continuing enforcement of [Chapter 2271]." [Dkt. 1 at 12] (emphasis added).
- [To]"Declare void any 'No Boycott of Israel' clause pursuant to [Chapter 2271] that now exists in *any and all contracts* between Texas public entities and private companies or persons." [Dkt. 1 at 12] (emphasis added).

These forms of relief are improper because they will not redress A&R's injury. A&R's injury is the monetary loss of a single contract from the City of Houston. The company's Complaint

mentions no other contracts to which it is a party. "The Art. III judicial power exists only to redress or otherwise protect against injury *to the complaining party*." *Vt. Agency of Nat. Res v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (emphasis in original) (quotation marks omitted). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) (internal citations omitted). Standing's redressability requirement requires that the remedy be tied to the plaintiff's injury, "a remedy that is likely to redress that injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021). One company that has lost one contract has no standing to nullify every Texas government contract to which it is not a party. A&R may only seek relief that will remedy its own injury of not receiving one particular contract from the City of Houston.

## II.     A&R lacks standing to bring vagueness and overbreadth claims

A&R argues that portions of Chapter 2271, specifically the statute's definition of "Boycott Israel", are both overbroad and vague. [Dkt. 1 ¶¶ 55–56]; [Dkt. 7-2 at 16]. But A&R has not established an injury due to the law's alleged vagueness.

The requirements of standing are somewhat relaxed in the First Amendment context, "but only as relating to the various court-imposed prudential requirements of standing." *Seals v. McBee*, 898 F.3d 587, 591 (5th Cir. 2018). Plaintiffs "still must show that they satisfy the core Article III requirements of injury, causation, and redressability." *Id.* Important here, "[t]he overbreadth doctrine applies on a *provision by provision* basis: the plaintiff must establish injury under a particular provision of a regulation that is validly applied to its conduct, then assert a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court *under that provision.*" *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011) (emphasis in original). "Article III standing retains rigor even in an overbreadth claim*." Id.*

6

That means if a party is limited by one provision of a statute and makes "a facial challenge due to the overbreadth of a different provision, there is no constitutional standing, i.e., there is no 'case or controversy,' as to the separate provision." *Id*. The same is true for vagueness. The Fifth Circuit has held that "a lawsuit is not a general license for a federal court to examine all provisions of a municipal ordinance and decide if any are flawed." *Serv. Emps. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 597 (5th Cir. 2010). Thus, "the Supreme Court carefully examined claims against municipal ordinances to determine, provision by provision, if there were a claimant with standing to challenge it." *Id*.

Under this provision-by-provision approach, A&R lacks standing to make vagueness and overbreadth claims. Chapter 2271 defines "Boycott Israel" as "refusing to deal with, terminating business activities with, or otherwise taking any action that is intended to penalize, inflict economic harm on, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory, but does not include an action made for ordinary business purposes." Tex. Gov't Code § 808.001(1); § 2271.001(1) (incorporating this definition into Chapter 2271). A&R argues that the definition's residual provision—"otherwise taking any action that is intended to penalize, inflict economic harm, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory"—is vague. [Dkt. 7-2 at 12–13]. But the company's actions easily fall within the terms "refusing to deal with" Israel or "terminating business activities with" Israel or with a person or entity doing business in Israel.

Russ Hassouna, the owner of A&R, said: "It is my right and duty to boycott Israel and any products of Israel. This policy is against my constitutional right[.]" [Dkt. 1 ¶ 36]. A&R's Complaint further explains that "Mr. Hassouna boycotts Israel in his personal capacity," that

"A&R boycotts Israel in its capacity as a corporation," and that "A&R would refuse to buy an Israeli-sourced product were the opportunity to otherwise arise." *Id*. ¶¶ 39–40. All of these allegations are covered by the statutory terms "refusing to deal with" Israel or "terminating business activities with" Israel or with a person or entity doing business in Israel. A&R's boycott activities do not fall within the residual provision that it alleges is vague. Further, A&R has the burden to establish standing for every claim and every form of relief, and it nowhere alleges which of its actions fall within the residual provision. *See Town of Chester*, 137 S. Ct. at 1650 (plaintiff must establish standing for every claim and every form of relief).

Thus, A&R lacks standing to argue that the residual provision is vague because the company has no injury stemming from it.[2] As to overbreadth, A&R does not allege in its Complaint or preliminary injunction briefing which provisions of Chapter 2271 it believes are overbroad. But if the company is referencing the residual provision, then it lacks standing to challenge that provision under an overbreadth theory for the reasons discussed above.

### III.    A&R fails to state a cognizable First Amendment claim

The First Amendment generally protects speech or "conduct that is inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) ("FAIR"). *See, e.g.*, *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968) (analyzing when expressive conduct constitutes protected speech); *Spence v. Washington*, 418 U.S. 405, 409 (1974). A plaintiff bears the burden to show that its activity constitutes protected speech, and "if it is not, [the court] need

---

[2] A&R's Complaint also alleges that even if the company did not boycott Israel "it would refuse to certify that it would not boycott Israel for the duration of the renewal contract because, by signing, A&R would be compelled to speak in furtherance of a foreign government's interests." [Dkt. 1 ¶ 41]. But as discussed below, the residual provision, properly interpreted, does not compel speech. Nor does any other part of Chapter 2271.

go no further." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985). A&R has not met this burden.

**A.  The Israel clause validly regulates discriminatory conduct, not speech.**

The act of refusing to buy a product because of the activities or residence of its maker is neither speech nor inherently expressive conduct—no more so than the act of refusing to purchase a product only because one does not like it. Rather, such acts are pure conduct merely motivated by beliefs that can take protected form with separate explanatory speech. *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (finding no First Amendment protection for a law firm's gender-discriminatory partner-selection practices, regardless of the potential First Amendment status of the beliefs motivating those practices).

Boycotting by itself is not speech. Whatever speech may *accompany* boycotting, the act itself does not communicate through words or any other inherently expressive medium. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995) (discussing a variety of "mediums of expression" that are protected speech). Boycotters boycott by refusing to buy things, often without any accompanying speech.

*FAIR* involved a statute known as the Solomon Amendment. The Solomon Amendment required law schools, as a condition of receiving federal funds, to provide military recruiters with equal access to students like any other prospective employer. *FAIR,* 547 U.S. at 51. A group of law schools wished to boycott the military in protest of its then-existing policy preventing members of the LGBT community from openly serving in the Armed Forces. *Id*. at 52. The law schools sued, alleging various First Amendment violations. The Supreme Court held that the First Amendment's protections did not apply to the Solomon Amendment because the statute—an anti-boycott provision—"regulates conduct, not speech. It affects what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id*. at 60 (emphases in

original). The Court explained that "the Solomon Amendment neither limits what law schools may say nor requires them to say anything. Law schools remain free under the statute to express whatever views they may have" on the military's policy, while still receiving federal funds. *Id.* at 60.

The Court also held that the Solomon Amendment did not regulate expressive conduct. The First Amendment protects only conduct that is "inherently expressive" such as burning the American flag. *Id*. at 66. That is because the message that the conduct conveys is "overwhelmingly apparent." *Id*. But unlike flag burning, the conduct that the Solomon Amendment proscribed was not inherently expressive. Prior to the Solomon Amendment, the law schools "expressed" their disagreement with the military by requiring military recruiters to conduct job interviews away from the law school. *Id.* But that type of action was "expressive only because the law schools accompanied their conduct by speech explaining it." *Id.* Indeed, "an observer who sees military recruiters interviewing away from the law school has no way of knowing whether the law school is expressing its disapproval of the military, all the law school's interview rooms are full, or the military recruiters decided for reasons of their own that they would rather interview someplace else." *Id*. Thus, the "expressive component" of the law schools' actions was "not created by the conduct itself but by the speech that accompanies it." *Id.* "The fact that such explanatory speech is necessary is strong evidence that the conduct at issue . . . is not so inherently expressive that it warrants protection." *Id*. "If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Id.*

*FAIR* is dispositive of A&R's claims here. The act of choosing not to purchase a product is not speech. Just as the Solomon Amendment did not require the law schools to say anything, but

regulated only what the law schools had to *do,* Chapter 2271 does not require A&R to *say* anything or refrain from *saying* anything; it only constrains what A&R must *do—i.e.*, not boycott Israel if it wishes to contract with the State.

Further, A&R's boycott of Israel is not "inherently expressive" because the message it conveys, absent separate explanatory speech, is not "overwhelmingly apparent." *Id*. at 66. A&R's views about the boycott are only expressive when accompanied by its additional statements regarding the Israeli-Palestinian conflict. The simple absence of products from A&R's business does not convey any "overwhelmingly apparent" message like flag burning would. Just like an observer in *FAIR* would not infer any message from witnessing military recruiters conducting job interviews away from the law school, the vast majority of observers who visited A&R would not notice that the *absence* of certain products such as Hewlett-Packard computers, Pillsbury food products, Puma clothing or athletic equipment, or Sabra hummus[3] conveys the message that A&R boycotts Israel because of the company's views on the Israeli-Palestinian conflict.

In sum, A&R's boycott is not speech nor inherently expressive conduct.[4]

### B.  The Israel clause does not compel speech.

Although it does not elaborate on the point in its motion for a preliminary injunction, A&R argues in its Complaint that even if it were not boycotting Israel, it would refuse to certify that it would not do so because "by signing, A&R would be compelled to speak in furtherance of a foreign

---

[3] A&R's complaint does not specifically allege what products it boycotts, but these are examples of companies and products that Israel boycotters target. *See Know What to Boycott*, https://bdsmovement.net/get-involved/what-to-boycott.

[4] *FAIR* also resolves A&R's freedom-of-association claim. The Supreme Court rejected the same claim by the law schools, explaining that "[s]tudents and faculty [were] free to associate to voice their disapproval of the military's message; nothing about the statute affects the composition of the group[.]" *Id.* at 69–70. That is equally true here. A&R is still free to associate with anyone it wants and to voice its opposition to Israel's policies.

government's interests." [Dkt. 1 ¶ 41]. This compelled speech argument fails. Chapter 2271 does not compel speech. Certification requirements generally do not violate the First Amendment. No one would suggest that a statute compelled speech by requiring contractors to certify that they do not engage in race or gender discrimination. *See Grove City College v. Bell*, 465 U.S. 555, 575-76 (1984), *superseded by statute on other grounds*, *NCAA v. Smith*, 525 U.S. 459, 466 n.4 (1999) (rejecting an argument that conditioning federal financial assistance on compliance with Title IX's prohibition on gender discrimination violated the First Amendment). Chapter 2271's verification requirement is best understood as a nondiscrimination requirement that state contractors must sign before they can obtain the benefit of a state contract. As discussed below, it prevents state contractors from engaging in national origin discrimination.

Chapter 2271 merely requires potential contractors to verify that they will not engage in certain conduct, not speech. It does not require any business to certify that it "has not engaged, or will not engage, in protected speech activities," *Cole v. Richardson*, 405 U.S. 676, 680 (1972), let alone require contractors "to profess a specific belief," *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218 (2013). Signing a contract with an Israel clause in no way requires A&R to speak in furtherance of Israel's interests because A&R is simultaneously free to speak out against Israel in any way. No one will think that A&R supports Israel's policies because it signed an engineering contract containing an Israel clause if the company chooses to criticize Israel publicly. *See FAIR*, 547 U.S. at 64–65 (rejecting law schools' argument that complying with the Solomon Amendment could send a message that they saw nothing wrong with the military's policies).

## C.  Even if the Israel clause regulates expressive conduct, it remains permissible.

Chapter 2271 does not implicate speech or inherently expressive conduct. But even if it did, it regulates expressive conduct at most because it does not stop A&R from saying anything,

including voicing its disagreement with Israel's policies. Thus, if it is subject to any level of review, it is at best subject to intermediate scrutiny under *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968). *See FAIR*, 547 U.S. at 67. Under intermediate scrutiny, "an incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien*, so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* (explaining the *O'Brien* test); *see also id.* (holding that even if the Solomon Amendment regulated expressive conduct, it would not violate the First Amendment under *O'Brien*). Chapter 2271 meets and exceeds that standard.

The law serves the compelling state interest of preventing national-origin discrimination among companies seeking the State of Texas's business. A&R's boycott of Israel necessarily discriminates on the basis of Israeli national origin. Mr. Hassouna, the owner of A&R, stated that "It is my right and duty to boycott Israel *and any products of Israel*." [Dkt. 1 ¶ 37] (emphasis added). A&R's complaint further states that "Although A&R's boycott has not materially affected any of its business decisions through the present, A&R *would refuse to buy an Israeli-sourced product* were the opportunity to otherwise arise." [Dkt. 1 ¶¶ 40] (emphasis added). This boycott policy makes no distinction between the government of Israel and private Israeli businesses, between businesses who operate in disputed territories and those who do not, or between those Israeli companies who play some role in the Israeli-Palestinian conflict and those who do not. This boycott necessarily discriminates on the basis of national origin.

More broadly, to refuse to do business with individuals and entities on the basis of their nationality is to discriminate on the basis of national origin—by definition. *See, e.g.*, *Athenaeum v. Nat'l Lawyers Guild, Inc.*, No. 653668/16, 2017 WL 1232523, at *5–7 (N.Y. Sup. Ct. Mar. 30, 2017) (blanket refusal to deal "because Plaintiff [wa]s an Israeli corporation" stated viable claim

of national-origin discrimination). Israel is overwhelmingly populated by Israelis—*i.e.*, individuals and businesses with Israeli national origin. Boycotts against all Israeli companies—regardless of their views or role in the Israeli-Palestinian conflict—are national-origin discrimination under any reasonable construction of that term, just as blanket refusals to conduct any business with citizens of any other country would be.

That fact suffices to establish Chapter 2271's compelling state interest in preventing invidious discrimination, *see, e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 628–29 (1984); *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983), and that interest could not be achieved absent the regulation. And because Chapter 2271 is a valid antidiscrimination measure, it follows that it is viewpoint neutral. *See Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) (noting that "federal and state antidiscrimination laws . . . have previously [been] upheld against constitutional challenge" and that the Court had cited Title VII of the Civil Rights Act of 1964 "as an example of a permissible content-neutral regulation of conduct"). For these reasons, even if the State's interest in passing Chapter 2271 needed to be balanced against any potential restrictions on A&R's First Amendment rights, Chapter 2271 would still survive constitutional scrutiny.

**D.  A&R's reliance on *Claiborne* is misplaced.**

A&R contends that "non-violent boycotts intended to advance civil rights constitute 'forms of speech or conduct that are ordinarily entitled to protection under the First and Fourteenth Amendments.'" [Dkt. 1 ¶ 47] (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982)). But the Supreme Court's decision in *Claiborne* merely stands for the proposition that engagement in nonviolent "speech, assembly, association, and petition" in support of a boycott of certain merchants to protest racial discrimination is protected by the First Amendment. *See Claiborne*, 458 U.S. at 911. There, a local branch of the NAACP organized a boycott of white merchants in Claiborne County, Mississippi who refused to meet their demands for racial equality.

*Id*. at 899–900. A state court found that "the entire boycott was unlawful," *id.* at 895, and held multiple organizations and individuals liable for damages to businesses targeted by the boycott. *Id.* at 896.

The Supreme Court held that certain non-violent "elements of the boycott," such as "speeches and nonviolent picketing" and "encourag[ing] others to join in its cause," were "form[s] of speech or conduct that [are] ordinarily entitled to protection under the First and Fourteenth Amendments." *Id.* at 907 (footnote omitted); *see also id.* at 909 (explaining that the First Amendment extended to activities such as "peaceful picketing," "a peaceful march and demonstration," "public address," reading "names of boycott violators" aloud at meetings, and publishing the names of violators in a local newspaper). The Court determined that the First Amendment prevented the State from prohibiting these "nonviolent elements of petitioners' activities" under its power "to regulate economic activity." *Id.* at 914–15. The Court recognized that the boycott also involved unprotected activity, however; it held that the State could not impose civil liability on all boycott participants "merely because [they] belonged to a group, some members of which committed acts of violence." *Id.* at 920.

*Claiborne* thus did not address the question whether the First Amendment protects a decision not to purchase certain goods or patronize certain businesses. Nor did the Court consider the question presented here: whether the State itself may choose not to contract with businesses engaged in a boycott that discriminates based on national origin. *See* Order on Motion for Stay Pending Appeal at 6, *Jordahl v. Brnovich*, Case No. 18-16896, Dkt. No. 26 (9th Cir. Oct. 31, 2018) (Ikuta, J., dissenting), ECF No. 26 (noting that in *Claiborne*, the "Court did not hold that the boycotters' refusal to purchase from white-owned businesses was protected by the First Amendment, or even address the issue."). Thus, *Claiborne* is inapplicable here.

The Supreme Court has held, however, that a union's politically-motivated secondary boycott on goods from a particular country does not qualify as protected speech. In *Int'l Longshoremen's Ass'n v. Allied Int'l, Inc.*, 456 U.S. 212 (1982), the Court determined that a boycott of Russian goods by the International Longshoremen's Association (ILA) violated the National Labor Relations Act's ban on secondary boycotts. *Id*. at 226–27. The president of the ILA "ordered ILA members to stop handling cargoes arriving from or destined for the Soviet Union" in protest of "the Russian invasion of Afghanistan." *Id*. at 214. In response, longshoremen on "the east and gulf coasts refused to service ships carrying Russian cargoes." *Id*. at 215. This had the effect of placing "a heavy burden on neutral employers" carrying the goods ILA was boycotting. *Id*. at 223. Like A&R's boycott of Israel and Israeli products, the boycott in *Longshoremen* was "not a labor dispute with a primary employer but a political dispute with a foreign nation." *Id*. at 224. Most critically for purposes of A&R's claims, the Court summarily rejected the ILA's First Amendment argument, noting that the Court has "consistently rejected the claim that secondary picketing by labor unions in violation of [the NLRA] is protected activity under the First Amendment." *Id*. at 226.

The public-contractor boycotts of Israel that Chapter 2271 prohibits are materially identical, for First Amendment purposes, to the boycott the Court held was not protected First Amendment conduct in *Longshoremen's*. The Court knew that the ILA started the boycott to protest the actions of a foreign nation, but that fact did not create First Amendment protection for it. Similarly, that A&R's boycott is politically motivated because of the company's views on Israel's conflict with the Palestinians does not transform the boycott from conduct into protected speech.

### E.  The Israel clause is a restriction on government speech.

"When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Division, Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2245 (2015) (citing *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467–68 (2009)). In *Walker*, the State of Texas was sued for allegedly violating a nonprofit organization's free speech rights by denying the organization's application to order personalized license plates with an image of the confederate flag. The Supreme Court "refused to hold that the Government unconstitutionally discriminates on the basis of viewpoint when it chooses to fund a program dedicated to advance certain permissible goals, because the program in advancing those goals necessarily discourages alternative goals." *Id.* at 2246 (quoting *Rust v. Sullivan*, 500 U.S. 173, 194 (1991)) (internal quotation marks and brackets omitted). Generally, "when the government speaks it is entitled to promote a program, to espouse a policy, or to take a position. In doing so, it represents its citizens and it carries out its duties on their behalf." *Id.*

Chapter 2271 espouses the State's policy of supporting Israel and takes the position that public funds will not be used to pay companies that act contrary to this policy. It does not allocate state money for a program—it limits the payment of state money to companies that are not actively engaged in efforts that undermine Texas policy. Texas has not engaged in viewpoint discrimination simply because it chooses to advance its goal of supporting Israel over alternative goals.

### IV.  A&R fails to state a cognizable vagueness claim

When reviewing a void for vagueness claim, a court "should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982). But when a plaintiff "engages in some conduct that is clearly proscribed" the plaintiff "cannot complain of the vagueness of

the law as applied to others." *Id*. Accordingly, a court should "*examine the complainant's conduct* before analyzing other hypothetical applications of law." *Id*. (emphasis added).

The definition of "Boycott Israel" means "refusing to deal with, terminating business activities with, or otherwise taking any action *that is intended to penalize, inflict economic harm, or limit commercial relations specifically with Israel*[.]" Tex. Gov't Code § 808.001(1) (emphasis added). A&R argues that the definition's residual provision—"otherwise taking any action that is intended to penalize, inflict economic harm, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory"—is vague. [Dkt. 7-2 at 12–13]. But the company's actions easily fall within the other statutory terms: "refusing to deal with" Israel or "terminating business activities with" Israel or with a person or entity doing business in Israel.

Russ Hassouna, the owner of A&R said "It is my right and duty to boycott Israel and any products of Israel. This policy is against my constitutional right . . ." [Dkt. 1 ¶ 36]. A&R's Complaint further explains that "Mr. Hassouna boycotts Israel in his personal capacity," that "A&R boycotts Israel in its capacity as a corporation," and that "A&R would refuse to buy an Israeli-sourced product were the opportunity to otherwise arise." *Id*. ¶¶ 39–40. All of these allegations are covered by the statutory terms "refusing to deal with" Israel or "terminating business activities with" Israel or with a person or entity doing business in Israel. A&R's boycott activities do not fall within the residual provision that it alleges is vague. For these reasons, Chapter 2271 is not vague as applied to A&R's conduct. Accordingly, A&R "cannot complain of the vagueness of the law as applied to others[.]" *Hoffman Estates*, 455 U.S. at 494–95.

Further, if the Court holds that the residual clause is ambiguous, three canons of statutory construction both plausibly ascertain its meaning and show that it does not encompass protected

speech. Under the *noscitur a sociis* canon "a word is known by the company it keeps," *Yates v. United States*, 574 U.S. 528, 543 (2015). The *ejusdem generis* canon teaches that "where general words follow an enumeration of specific terms, the general words are read to apply only to other items like those specifically enumerated," *United States v. Kaluza*, 780 F.3d 647, 660-61 (5th Cir. 2015) And the canon of constitutional avoidance explains that "when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018).

Applying these canons, the residual clause—taking any action that is intended to penalize, inflict economic harm, or limit commercial relations with Israel—refers to economic conduct similar to its predecessor terms "refusing to deal with" or "terminating business activities with" Israel. Thus, it covers economic conduct such as intentionally raising prices on items shipped to Israel, refusing to ship products to Israel, and similar conduct. The statute's residual clause is not vague, nor does it apply to protected speech.

## V.     A&R fails to state a cognizable overbreadth claim

A&R offers no factual statements or allegations to suggest that Chapter 2271 is overbroad. Instead, it states in one conclusory sentence: "Tex. Gov't Code § 2271.001 *et. seq*. and the 'No Boycott of Israel' clause are each substantially overbroad." [Dkt. 1 ¶ 55]. A&R does not allege in its complaint or preliminary injunction briefing which provisions of Chapter 2271 it believes are overbroad. But if the company is referencing the residual provision, then it may not challenge that provision under an overbreadth theory. As discussed above, that provision is immaterial to A&R.

Further, "[w]here conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). The substantiality of harm

19

requirement is significant because application of the overbreadth doctrine is "strong medicine" to be "employed by the Court sparingly and only as a last resort." *Id*. at 613.

Nothing in A&R's complaint remotely suggests that Chapter 2271 has a substantial likelihood of chilling protected speech. The law's "plainly legitimate sweep" concerns economic conduct only, not speech. Those companies opposed to Israel are not prohibited from protesting its policies even if they are already contracted with a state governmental entity. If A&R were to sign the contract with the City of Houston the company could still speak in protest of Israel's policies, tell others to boycott Israel, and A&R's owner and any other employees could still boycott Israel in their personal capacities. The law does not affect First Amendment rights. But even if it did, Chapter 2271's application to expressive conduct only, *see* Part III(c), *supra*, undercuts the substantiality of harm because that conduct may be validly restricted under *O'Brien*. *See FAIR*, 547 U.S. at 67 (explaining the *O'Brien* intermediate scrutiny test).

## CONCLUSION

For the reasons states above, the Court should dismiss A&R's claims with prejudice.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

MURTAZA F. SUTARWALLA
Deputy Attorney General for Legal Counsel

JOSHUA R. GODBEY
Division Chief
Financial Litigation and Charitable Trusts Division

*/s/ Wm. Sumner Macdaniel*
WILLIAM SUMNER MACDANIEL
Assistant Attorney General
State Bar No. 24093904
SD Bar No. 3293076
Tel: (512) 936-1862
William.Macdaniel@oag.texas.gov

CYNTHIA A. MORALES
Attorney-in-Charge
Assistant Attorney General
State Bar No. 14417420
SD Bar No. 23091
Tel: (512) 475-4470
Cynthia.Morales@oag.texas.gov

Financial Litigation and Charitable Trusts Division
Office of the Attorney General
P.O. Box 12548/Mail Stop 017
Austin, TX 78711-2548
Division Fax: (512) 477-2348

*Counsel representing Ken Paxton,*
*In his official capacity as Attorney General of Texas*

## CERTIFICATE OF CONFERENCE AND
## CERTIFICATION REGARDING 12(B)(6) MOTION

I certify that on December 6, 2021, I called the offices of The John T. Floyd Law Firm, and asked to speak with either John Floyd or Chris Choate, counsel for Plaintiff A&R. Neither counsel was available, and I left a message with the firm receptionist asking for one of them to return my call. I received a call later that afternoon from Justin Sadowsky with the CAIR Legal Defense Fund, who is also representing Plaintiff A&R in this litigation. Mr. Sadowsky and I discussed the issues addressed in this motion and were unable to reach an agreement regarding the motion's disposition. I further certify that Mr. Sadowsky and I could not reach a resolution regarding any permissible pleading to remedy the issues addressed in the 12(b)(6) motion.

*/s/ Wm. Sumner Macdaniel*
WILLIAM SUMNER MACDANIEL
Assistant Attorney General


## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, the foregoing *Motion to Dismiss Under Rule 12(b)(1) and Rule 12(b)(6)* was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Wm. Sumner Macdaniel*
WILLIAM SUMNER MACDANIEL
Assistant Attorney General

22