**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **A & R ENGINEERING AND TESTING, INC.,**<br>     **Plaintiff,**<br><br>**v.**<br><br>**CITY OF HOUSTON, and KEN PAXTON, in<br>his official capacity as Attorney General of<br>Texas,**<br>     **Defendants.** | **Case No. 4:21-cv-03577** |

**DEFENDANT KEN PAXTON'S RESPONSE TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

MURTAZA F. SUTARWALLA
Deputy Attorney General for Legal Counsel

JOSHUA R. GODBEY
Division Chief
Financial Litigation and Charitable Trusts Division

*/s/ Wm. Sumner Macdaniel*
WILLIAM SUMNER MACDANIEL
Assistant Attorney General
State Bar No. 24093904
SD Bar No. 3293076
Tel: (512) 936-1862
William.Macdaniel@oag.texas.gov

CYNTHIA A. MORALES
Attorney-in-Charge
Assistant Attorney General
State Bar No. 14417420

SD Bar No. 23091
Tel: (512) 475-4470
Cynthia.Morales@oag.texas.gov

Financial Litigation and Charitable Trusts Division
Office of the Attorney General
P.O. Box 12548/Mail Stop 017
Austin, TX 78711-2548
Division Fax: (512) 477-2348

*Counsel representing Ken Paxton,*
*In his official capacity as Attorney General of Texas*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................................... iii

INDEX OF AUTHORITIES ................................................................................................... iv

DEFENDANT KEN PAXTON'S RESPONSE TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION ............................................................................................ 1

BACKGROUND .................................................................................................................... 1

    I.    The Boycott, Divestment, and Sanctions movement against Israel .................................... 1

    II.    The Texas Legislature enacts Chapter 2271 ............................................................. 3

    III.    A&R seeks to invalidate Chapter 2271 statewide ...................................................... 4

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT AND AUTHORITIES ................................................................................. 5

    I.    A facial challenge cannot be sustained on this record ................................................... 6

    II.    Chapter 2271 does not violate the First or Fourteenth Amendments ............................... 7

        A.    The law validly regulates discriminatory conduct, not speech .................................. 8

        B.    The law does not compel speech ........................................................................ 10

        C.    Even if the law regulates expressive conduct, it remains permissible ......................... 11

        D.    A&R's reliance on *Claiborne* is misplaced ............................................................. 12

        E.    The law is a restriction on government speech ..................................................... 14

        F.    The law is not vague ....................................................................................... 15

        G.    The law is not overbroad .................................................................................. 16

    III.    A&R's harm is reparable ...................................................................................... 17

    IV.    Equity does not support injunctive relief ................................................................ 19

CONCLUSION ................................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................................ 222

# INDEX OF AUTHORITIES

Cases                                                                                              Pages(s)

*ADT, LLC v. Capital Connect, Inc.*,
    145 F. Supp. 3d 671 (N.D. Tex. 2015)....................................................................................... 17

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
    570 U.S. 205 (2013) ........................................................................................................... 10

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
    878 F.2d 806 (5th Cir. 1989)............................................................................................... 5

*Athenaeum v. Nat'l Lawyers Guild, Inc.*,
    No. 653668/16, 2017 WL 1232523 (N.Y. Sup. Ct. Mar. 30, 2017)........................................ 11

*Briggs & Stratton Corp. v. Baldridge*,
    539 F. Supp. 1307 (E.D. Wis. 1982) ................................................................................ 2, 4

*Briggs & Stratton Corp. v. Baldridge*,
    728 F.2d 915 (7th Cir 1984)................................................................................................. 2

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973) ........................................................................................................... 16

*Canal Auth. Of the State of Fla. V. Callaway*,
    489 F.2d 567 (5th Cir. 1974)............................................................................................... 5

*Catholic Leadership Coalition of Texas v. Reisman*,
    764 F.3d 409 (5th Cir. 2014) ............................................................................................... 6

*Cole v. Richardson*,
    405 U.S. 676 (1972) ........................................................................................................... 10

*Elrod v. Burns*,
    427 U.S. 347 (1976) ........................................................................................................... 18

*Enterprise Int'l., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
    762 F.2d 464 (5th Cir. 1985)............................................................................................... 17

*Gen. Motors Corp. v. Harry Brown's, LLC*,
    563 F.3d 312 (8th Cir. 2009)............................................................................................... 17

*Grove City College v. Bell*,
    465 U.S. 555 (1984) ....................................................................................................... 6, 10

*Hersh v. U.S. ex rel. Mukasey*,
    553 F.3d 743 (5th Cir. 2008)............................................................................................... 7

*Hishon v. King & Spalding,*
467 U.S. 69 (1984) ............................................................................... 8

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston,*
515 U.S. 557 (1995) ............................................................................. 8

*Int'l Longshoremen's Ass'n v. Allied Int'l, Inc.,*
456 U.S. 212 (1982) ....................................................................... 13, 14

*Jennings v. Rodriguez,*
138 S. Ct. 830 (2018) ......................................................................... 15

*Justice v. Hosemann,*
771 F.3d 285 (5th Cir. 2014) ............................................................... 6

*Maryland v. King,*
567 U.S. 1301 (2012) .......................................................................... 19

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
760 F.2d 618 (5th Cir. 1985) ............................................................... 5

*NAACP v. Claiborne Hardware Co.,*
458 U.S. 886 (1982) ....................................................................... 12, 13

*NCAA v. Smith,*
525 U.S. 459 (1999) ............................................................................. 6

*Nken v. Holder,*
556 U.S. 418 (2009) ............................................................................. 19

*Pham v. Univ. of La. at Monroe,*
194 F. Supp. 3d 534 (W.D. La. 2016) ................................................ 17

*Pleasant Grove City v. Summum,*
555 U.S. 460 (2009) ............................................................................. 14

*Rondeau v. Mosinee Paper Corp.,*
422 U.S. 49 (1975) ............................................................................... 16

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
547 U.S. 47 (2006) ........................................................................ passim

*Rust v. Sullivan,*
500 U.S. 173 (1991) ............................................................................. 14

*Texans for Free Enter. v. Tex. Ethics Comm'n,*
732 F.3d 535 (5th Cir. 2013) ............................................................... 18

*Texas v. Seatrain Int'l, S.A.*,
  518 F.2d 175 (5th Cir. 1975)................................................................. 5

*United States v. Kaluza*,
  780 F.3d 647 (5th Cir. 2015)............................................................... 15

*United States v. O'Brien*,
  391 U.S. 367 (1968) ................................................................... 11, 16

*United States v. Stevens,*
  559 U.S. 460 (2010*)* .................................................................... 6, 7

*Veasey v. Abbott*,
  870 F.3d 387 (5th Cir. 2017)............................................................... 19

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
  135 S. Ct. 2239 (2015) ..................................................................... 14

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................... 5, 19

*Wisconsin v. Mitchell*,
  508 U.S. 476 (1993) ....................................................................... 12

*Yates v. United States*,
  574 U.S. 528 (2015) ....................................................................... 15

<u>Statutes</u>

10 U.S.C. § 983.................................................................... 8, 9, 11

19 U.S.C. § 4452 ............................................................................. 2

19 U.S.C. § 4452(b)(4)-(5) ................................................................. 3

19 U.S.C. § 4452(c) ........................................................................ 3

29 U.S.C. § 151........................................................................ 13, 14

42 U.S.C. § 2000e ......................................................................... 12

Ark. Code Ann. § 25-1-503 ................................................................ 4

Fla. Stat. § 287.135 ........................................................................ 4

Ga. Code Ann. § 50-5-85 ................................................................... 4

Iowa Code  Ann. § 12J.6.................................................................... 4

Israel Anti-Boycott Act of 2018, Pub. L. No. 115-232, § 1771-74 ................................ 2

Nev. Rev. Stat. Ann. § 333.338 ................................................................................ 4

Tex. Gov't Code § 2271.001 ...................................................................................... 1

Tex. Gov't Code § 2271.002 ...................................................................................... 3

Tex. Gov't Code § 808.001 ....................................................................................... 3

Tex. Gov't Code § 808.001(1) .................................................................................. 15

Tex. Gov't Code ch. 2270 .......................................................................................... 3

Tex. Gov't Code ch. 2271 .................................................................................. passim

Other Authorities

H.J. of Tex., 85th Leg., R.S. (2017) ......................................................................... 3

House Comm. on State Affairs, Bill Analysis,
   Tex. H.B. 89, 85th Leg., R.S. (2017) ................................................................... 3

S.J. of Tex., H.B. 89, 85th Leg., R.S. (2017) ........................................................... 3

Senate Comm. on Bus. And Commerce, Bill Analysis
   Tex. H.B. 89, 85th Leg., R.S. (2017) ................................................................... 3

Tex. H.B. 4170, 86th Leg., R.S. (2019) .................................................................... 3

Tex. H.B. 89, 85th Leg., R.S. (2017) ........................................................................ 3

U.S. Const. amend. I .......................................................................................... passim

U.S. Const. amend. XIV ....................................................................................... 4, 7

Administrative Reports & Decisions

*Effects of the Arab League Boycott of Israel on U.S. Businesses*,
   Inv. No. 332-349, USITC Pub. 2827 (Nov. 1994) ............................................... 2

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **A & R ENGINEERING AND TESTING, INC.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**CITY OF HOUSTON, and KEN PAXTON, in his official capacity as Attorney General of Texas,**<br><br>     **Defendants.** | **Case No. 4:21-cv-03577** |

<u>**DEFENDANT KEN PAXTON'S RESPONSE TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**</u>

In 2017, the Texas Legislature passed, and the Governor signed, a widely supported anti-discrimination law prohibiting companies who contract with the State from engaging in invidious economic boycotts against the State of Israel. *See* Tex. Gov't Code § 2271.001 *et seq*. Plaintiff A & R Engineering and Testing, Inc. ("A&R") asks this Court to undo that progress and facially invalidate the law statewide with a preliminary injunction despite lacking any actual threat of irreparable harm or meritorious argument that the law is unconstitutional. The Court should decline this request.

<u>**BACKGROUND**</u>

I.     **The Boycott, Divestment, and Sanctions movement against Israel**

Since its creation in 1948, the State of Israel has endured crippling economic boycotts aimed at the mere existence of the world's only Jewish state. The first boycotts were institutionalized by the Arab League's Central Boycott Office in Damascus. *See* Constance A. Hamilton, *Effects of the Arab League Boycott of Israel on U.S. Businesses*, Inv. No. 332-349,

1

USITC , Pub. 2827 (Nov. 1994) at 5. In 1994, the United States International Trade Commission found that the Arab League Boycott—the prototype of the nationality-based boycott that Chapter 2271 addresses—cost Israel's economy $2 billion a year. *Id*. at vi. This decades-long commercial campaign undergirds this law.

President Carter signed the Export Administration Act of 1979 (the EAA) to counter the Arab League boycott and address the pronounced problem of foreign-state-led boycotts of Israel. *See Briggs & Stratton Corp. v. Baldridge*, 539 F. Supp. 1307, 1310 (E.D. Wis. 1982), *aff'd*, 728 F.2d 915, 916 (7th Cir. 1984) . The EAA directs the "President [to] issue regulations prohibiting any United States person . . . from . . . support[ing] any boycott fostered or imposed by a foreign country against a [friendly] country [*e.g.*, Israel]." *Id*. at 1311. The EAA imposes criminal felony liability for violations, which include "[f]urnishing information about . . . hav[ing] any business relationship . . . with or in the boycotted country." *See id.* The EAA survived a First Amendment challenge in *Briggs* and does not appear to have been challenged since then.[1]

When the EAA was enacted the dominant Israel boycott was foreign-state led. Since then, a new boycott has emerged through the Boycott, Divestment, and Sanctions ("BDS") movement. *See* What to Boycott, https://bdsmovement.net/get-involved/what-to-boycott (last visited Dec. 1, 2021). Because BDS boycotts are not foreign-state-led, they fall outside of the EAA.

Federal policy regarding BDS boycotts makes clear that these efforts are an anathema to the United States' interest. *See* 19 U.S.C. § 4452. In particular, Congress "opposes politically motivated actions that penalize or otherwise limit commercial relations specifically with Israel, such as boycotts of, divestment from or sanctions against Israel [*i.e.*, BDS campaigns]" and

---

[1] The EAA was recently re-enacted by Congress in 2018 as part of the Defense Authorization Act. *See* Anti-Boycott Act of 2018, Pub. L. No. 115-232 §§ 1771-74. That Act passed 359-54 in the House and 87-10 in the Senate.

explained that such boycotts "are *contrary to the principle of nondiscrimination*[.]" *Id*. § 4452(b)(4)–(5) (emphasis added). Congress further directed that a "principal trade negotiating objective[] of the United States" is "[t]o discourage politically motivated boycotts of, divestment from, and sanctions against Israel[.]" *Id*. § 4452(c).

## II.     The Texas Legislature enacts Chapter 2271

The Texas Legislature enacted Chapter 2271 in 2017 by wide bipartisan margins.[2] The law passed unanimously in the House, and 26-5 in the Senate. *See* H.B. 89, S.J. of Tex., 85th Leg., R.S. 1332 (2017); H.J. of Tex., 85th Leg. R.S. 1749–50 (2017). Texas aims to "prevent taxpayer resources from  supporting businesses which work to isolate Israel from global trade," because "Israel is a key ally and trading partner of the United States and Texas." *See* House Comm. On State Affairs, Bill Analysis, Tex. H.B. 89, 85th Leg., R.S. (2017); *see also* Senate Comm. On Bus. & Commerce, Bill Analysis, Tex. H.B. 89, 85th Leg., R.S. (2017). To combat these "discriminatory practices," Texas does not contract with a company for goods or services if that company refuses to deal with, terminates business activities with, or takes other actions intended to penalize, inflict economic harm on, or limit commercial relations with Israel (or someone doing business with Israel). Tex. Gov't Code §§ 808.001, 2271.002. Texas does not, however, consider business actions taken "for ordinary business purposes" to be a boycott. *Id.* § 808.001.

Chapter 2271 differs in two key respects from the EAA in that it: (1) applies to non-foreign-state-led boycotts of Israel, and (2) is not a direct regulation of the general public's conduct enforceable by felony prosecution. Instead, the law denies public contracts to businesses that are engaged in boycotts of Israel or will be engaged in a boycott of Israel during the contract's term. Tex. Gov't Code § 2271.002. To that end, the law requires public contractors to verify that the

---

[2] The law was initially codified as chapter 2270 in the Texas Government Code. The Texas Legislature redesignated it as Chapter 2271 in 2019. *See* H.B. 4170, 86th Leg., R.S. 158–59 (2019).

company "does not boycott Israel" and "will not boycott Israel during the term of the contract." ("Israel clause"). *Id.*

Texas is far from alone among the states in its decision not to contract with businesses that discriminatorily boycott Israel. Numerous states have similarly prohibited or limited government contracts with entities that boycott Israel. *See, e.g.*, Ark. Code Ann. § 25-1-503; Fla. Stat. § 287.135; Ga. Code Ann. § 50-5-85; Iowa Code Ann. § 12J.6; Nev. Rev. Stat. Ann. § 333.338.

**III.    A&R seeks to invalidate Chapter 2271 statewide**

In October 2021, the City of Houston sent A&R a renewal contract to provide engineering services that included a certification, as required by Chapter 2271, that A&R "is not currently engaging in, and agrees for the duration of the [contract] not to engage in, the boycott of Israel[.]" [Dkt. 1 ¶ 34]. A&R refused to sign the renewal contract and demanded that the Israel clause be stricken. *Id.* ¶ 36. The owner and executive vice president of A&R wrote to the City regarding the Israel clause, stating: "Israel is . . . an Apartheid State" and that it is A&R's "right and duty to boycott Israel and any products of Israel." *Id.* A&R's stance regarding any boycott of Israel "has not materially affected any of its business decisions" when this lawsuit was filed but it "would refuse to buy an Israeli-sourced product were the opportunity to otherwise arise." *Id.* ¶ 40.

Facing the loss of the contract, A&R filed this suit against the City and Attorney General Ken Paxton, alleging that Chapter 2271 violated the First and Fourteenth Amendments. *Id.* at 12. A&R sought declaratory relief that the law was unconstitutional and that the Israel clause was void in all government contracts statewide, as well as damages for all economic harm resulting from its decision not to renew its contract. *Id.* at 12–13.

A&R also sought a temporary restraining order against the City to keep its renewal contract open. *Id.* at 12. The City and A&R entered a stipulation regarding the requested temporary relief,

4

agreeing to hold the contract open, first until December 31, 2021, [Dkt. 6], and then again until January 31, 2022. [Dkt. 10-1].

A&R now seeks a preliminary injunction to strike the Israel clause from its renewal contract with the City and further enjoin the enforcement of Chapter 2271 by stripping the Israel clause from every state contract to which the law applies. [Dkt. 7 at 2], [Dkt 7-2 at 19].

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). The decision to grant a preliminary injunction is to be treated as "the exception rather than the rule." *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975); *Canal Auth. Of the State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). The moving party must establish the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) the injunction will serve the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989). At all times, the burden of persuasion remains with the plaintiff as to each of the four elements. *Allied Mktg. Grp.*, 878 F.2d at 809.

## ARGUMENT AND AUTHORITIES

A&R has not met, and cannot meet, the heavy burden to warrant preliminary injunctive relief. Chapter 2271 does not prohibit criticism of Israel or its policies. Rather, the law is designed to combat discrimination on the basis of national origin. The statute proscribes conduct, not speech, and A&R's arguments to the contrary are unpersuasive considering the longstanding legal precedent authorizing government entities to condition funds on conduct-based qualifications,

such as prohibiting race or gender discrimination. *See Grove City College v. Bell*, 465 U.S. 555, 575–76 (1984), *superseded by statute on other grounds*, *NCAA v. Smith*, 525 U.S. 459, 466 n.4 (1999) (rejecting an argument that conditioning federal financial assistance on compliance with Title IX's prohibition on gender discrimination violated the First Amendment).

But even if A&R's merits arguments were credible, the imposition of a preliminary injunction in this case is grossly unwarranted. A statewide injunction preventing Chapter 2271's enforcement is especially unnecessary for a contract dispute that is redressable through damages. A&R's injury is not the loss of any First Amendment rights. Even if boycotts were speech, A&R has not lost its right to boycott because it has refused to sign the contract. By refusing to sign the contract, A&R lost money in exchange for keeping the right to boycott. A&R's only injury is a monetary loss. Thus, an injunction is not appropriate relief.

## I.   A facial challenge cannot be sustained on this record

Constitutional challenges can either be brought as facial or as-applied claims. *See Justice v. Hosemann*, 771 F.3d 285, 295 (5th Cir. 2014). A&R brings a facial challenge to Chapter 2271, [Dkt. 7 at 2] ("Plaintiff's motion [for preliminary injunction] seeks to enjoin Defendants' enforcement of [Chapter 2271] . . . as facially unconstitutional."), but nowhere does it cite the applicable standard of review—that "no set of circumstances exists under which [the law] would be valid or that the statute lacks any plainly legitimate sweep."[3] *Catholic Leadership Coalition of*

---

[3] A&R also does not cite the applicable standard for overbreadth challenges. A&R does allege that Chapter 2271 is overbroad in its complaint, *see* [Dkt. 1 ¶ 55], but does not allege, much less argue, the same in its motion for preliminary injunction. *See* [Dkt. 7-2 at 16–17] (arguing that Chapter 2271 is void for vagueness and constitutes prior restraint, but stating nothing about overbreadth). Although there is a passing reference that Chapter 2271 "operates to chill free speech, expression, and association[,]"*id*. at 12, this statement is nowhere near sufficient to invoke an overbreadth challenge when A&R must demonstrate that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Catholic Leadership Coalition of Texas v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)). Therefore, this Court should not entertain an overbreadth challenge when evaluating whether A&R is likely to succeed on the merits.

*Texas v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)).

The Fifth Circuit has admonished that "facial challenges to the constitutionality of statutes should be granted sparingly and only as a last resort, so as-applied challenges are preferred." *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 762 (5th Cir. 2008). "Facial challenges 'often rest on speculation' because they do not involve specific applications of a statute, but rather hypothetical applications." *Id.* (citation omitted). Moreover, they also "'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.'" *Id.* (citation omitted). And "[i]nvalidating a law that is perfectly constitutional in some applications has 'obvious harmful effects.'" *Id.* (citation omitted).

Those concerns are pronounced here. A&R's briefing does not adequately explain how Chapter 2271 is facially unconstitutional. Chapter 2271 applies to a range of marketplace conduct well beyond the specific facts A&R presents in its motion. A&R has not shown that Chapter 2271 is unconstitutional in all its applications. And invalidating the entire statute would have the "obvious[ly] harmful effect[]" of preventing clearly constitutional applications of an anti-discrimination law that provides economic protection to a vital Texas ally and her citizens.

For these reasons, and considering the judicial preference for as-applied challenges compared with facial ones, the Court should construe A&R's claims as an as-applied challenge to Chapter 2271. Properly construed, those claims still fail for the reasons discussed below.

**II.    Chapter 2271 does not violate the First or Fourteenth Amendments**

As discussed in more detail in the State's accompanying motion to dismiss, A&R's First and Fourteenth Amendment claims fail for several reasons.

**A.  The law validly regulates discriminatory conduct, not speech**

The act of refusing to buy a product because of the activities or residence of its maker is neither speech nor inherently expressive conduct—no more so than the act of refusing to purchase a product only because one does not like it. Rather, such acts are pure conduct merely motivated by beliefs that can take protected form with separate explanatory speech. *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (finding no First Amendment protection for a law firm's gender-discriminatory partner-selection practices, regardless of the potential First Amendment status of the beliefs motivating those practices). Whatever speech may *accompany* boycotting, the act itself does not communicate through words or any other inherently expressive medium. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995) (discussing a variety of "mediums of expression" that are protected speech).

In *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) ("FAIR"), a group of law schools wished to boycott the military in protest of its then-existing policy preventing members of the LGBT community from openly serving in the Armed Forces. *Id*. at 52. They chose to boycott military recruiters' access to their campuses, a requirement that Congress imposed under the Solomon Amendment as a condition of receiving federal funds. *Id*. at 51. The law schools sued, alleging various First Amendment violations. The Supreme Court held that the First Amendment's protections did not apply to the Solomon Amendment because the statute—an anti-boycott provision—"regulates conduct, not speech. It affects what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id*. at 60 (emphases in original). The Court explained that "the Solomon Amendment neither limits what law schools may say nor requires them to say anything. Law schools remain free under the statute

to express whatever views they may have" on the military's policy, while still receiving federal funds. *Id.* at 60.

The Court also held that the Solomon Amendment did not regulate expressive conduct. The First Amendment protects only conduct that is "inherently expressive" such as burning the American flag. *Id*. at 66. That is because the message that the conduct conveys is "overwhelmingly apparent." *Id*. But the law schools' boycott was not "inherently expressive" because "an observer who sees military recruiters interviewing away from the law school has no way of knowing whether the law school is expressing its disapproval of the military, all the law school's interview rooms are full, or the military recruiters decided for reasons of their own that they would rather interview someplace else." *Id*. Thus, the "expressive component" of the law schools' actions was "not created by the conduct itself but by the speech that accompanies it." *Id.* "The fact that such explanatory speech is necessary is strong evidence that the conduct at issue . . . is not so inherently expressive that it warrants protection." *Id*.

*FAIR* is dispositive of A&R's claims here. The act of choosing not to purchase a product is not speech. Just as the Solomon Amendment did not require the law schools to say anything, but regulated only what the law schools had to *do*, Chapter 2271 does not require A&R to *say* anything or refrain from *saying* anything; it only constrains what A&R must *do—i.e.*, not boycott Israel if it wishes to contract with the State.

Further, A&R's boycott of Israel is not "inherently expressive" because the message it conveys, absent separate explanatory speech, is not "overwhelmingly apparent." *Id*. at 66. A&R's views about the boycott are only expressive when accompanied by its additional statements regarding the Israeli-Palestinian conflict. The simple absence of products from A&R's business does not convey any "overwhelmingly apparent" message like flag burning would. Just like an

observer in *FAIR* would not notice any type of message by witnessing military recruiters conducting job interviews away from the law school, the vast majority of observers who visited A&R would not notice that the *absence* of certain products conveys the message that A&R boycotts Israel because of the company's views on the Israeli-Palestinian conflict.

In sum, A&R's boycott is not speech nor inherently expressive conduct.[4]

### B.  The law does not compel speech

Chapter 2271 does not compel speech. Certification requirements generally do not violate the First Amendment. No one would suggest that a statute compelled speech by requiring contractors to certify that they do not engage in race or gender discrimination. *See Grove City College*, 465 U.S. at 575–76 (1984). Chapter 2271's verification requirement is best understood as a nondiscrimination requirement that state contractors must sign before they can obtain the benefit of a state contract. As discussed below, it prevents state contractors from engaging in national origin discrimination.

Chapter 2271 merely requires potential contractors to verify that they will not engage in certain conduct, not speech. It does not require any business to certify that it "has not engaged, or will not engage, in protected speech activities," *Cole v. Richardson*, 405 U.S. 676, 680 (1972), let alone require contractors "to profess a specific belief," *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218 (2013). Signing a contract with an Israel clause in no way requires A&R to speak in furtherance of Israel's interests because A&R is simultaneously free to speak out against Israel in any way. No one will think that A&R supports Israel's policies because it signed

---

[4] *FAIR* also resolves A&R's freedom-of-association claim. The Supreme Court rejected the same claim by the law schools, explaining that "[s]tudents and faculty [were] free to associate to voice their disapproval of the military's message; nothing about the statute affects the composition of the group[.]" *Id.* at 69–70. That is equally true here. A&R is still free to associate with anyone it wants and to voice its opposition to Israel's policies.

an engineering contract containing an Israel clause if the company chooses to criticize Israel publicly. *See FAIR*, 547 U.S. at 64–65 (rejecting law schools' argument that complying with the Solomon Amendment could send a message that they saw nothing wrong with the military's policies).

### C.  Even if the law regulates expressive conduct, it remains permissible

Chapter 2271 does not implicate speech or inherently expressive conduct. But even if it did, it regulates expressive conduct at most because it does not stop A&R from saying anything, including voicing its disagreements with Israel's policies. Thus, if it is subject to any level of review, it is at best subject to intermediate scrutiny under *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968). *See FAIR*, 547 U.S. at 67. Under intermediate scrutiny, "an incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien*, so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id*. (explaining the *O'Brien* test). Chapter 2271 meets and exceeds that standard.

The law serves the compelling state interest of preventing national-origin discrimination among companies seeking the State of Texas's business. A&R's boycott of Israel necessarily discriminates on the basis of Israeli national origin—to refuse to do business with individuals and entities on the basis of their nationality is to discriminate on the basis of national origin by definition. *See, e.g.*, *Athenaeum v. Nat'l Lawyers Guild, Inc.*, No. 653668/16, 2017 WL 1232523, at *5–7 (N.Y. Sup. Ct. Mar. 30, 2017) (blanket refusal to deal "because Plaintiff [wa]s an Israeli corporation" stated viable claim of national-origin discrimination). Israel is overwhelmingly populated by Israelis—*i.e.*, individuals and businesses with Israeli national origin. Boycotts against all Israeli companies—regardless of their views or role in the Israeli-Palestinian conflict—are

11

national-origin discrimination under any reasonable construction of that term, just as blanket refusals to conduct any business with citizens of any other country would be.

That fact suffices to establish Chapter 2271's compelling state interest in preventing invidious discrimination and that interest could not be achieved absent the regulation. And because Chapter 2271 is a valid antidiscrimination measure, it follows that it is viewpoint neutral. *See Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) (noting that "federal and state antidiscrimination laws . . . have previously [been] upheld against constitutional challenge" and that the Court had cited Title VII of the Civil Rights Act of 1964 "as an example of a permissible content-neutral regulation of conduct"). For these reasons, even if the State's interest in passing Chapter 2271 needed to be balanced against any potential restrictions on A&R's free-speech rights, Chapter 2271 would still survive constitutional scrutiny.

### D.  A&R's reliance on *Claiborne* is misplaced

A&R contends that "non-violent boycotts intended to advance civil rights constitute 'forms of speech or conduct that are ordinarily entitled to protection under the First and Fourteenth Amendments.'" [Dkt. 7-2 at 10] (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982)). But the Supreme Court's decision in *Claiborne* merely stands for the proposition that engagement in nonviolent "speech, assembly, association, and petition" in support of a boycott of certain merchants to protest racial discrimination is protected by the First Amendment. *See Claiborne*, 458 U.S. at 911. There, a local branch of the NAACP organized a boycott of white merchants in Claiborne County, Mississippi who refused to meet their demands for racial equality. *Id*. at 899–900. A state court found that "the entire boycott was unlawful," *id.* at 895, and held multiple organizations and individuals liable for damages to businesses targeted by the boycott. *Id.* at 896.

12

The Supreme Court held that certain non-violent "elements of the boycott," such as "speeches and nonviolent picketing" and "encourag[ing] others to join in its cause," were "form[s] of speech or conduct that [are] ordinarily entitled to protection under the First and Fourteenth Amendments." *Id.* at 907 (footnote omitted); *see also id.* at 909 (explaining that the First Amendment extended to activities such as "peaceful picketing," "a peaceful march and demonstration," "public address," reading "names of boycott violators" aloud at meetings, and publishing the names of violators in a local newspaper). The Court determined that the First Amendment prevented the State from prohibiting these "nonviolent elements of petitioners' activities" under its power "to regulate economic activity." *Id.* at 914–15. The Court recognized that the boycott also involved unprotected activity; however, it held that the State could not impose civil liability on all boycott participants "merely because [they] belonged to a group, some members of which committed acts of violence." *Id.* at 920.

But *Claiborne* did not address the question whether the First Amendment protects a decision not to purchase certain goods or patronize certain businesses. Nor did the Court consider the question presented here: whether the State itself may choose not to contract with businesses engaged in a boycott that discriminates based on national origin. Thus, *Claiborne* is inapplicable here.

The Supreme Court has held, however, that a union's politically-motivated secondary boycott on goods from a particular country does not qualify as protected speech. In *In'l Longshoremen's Ass'n v. Allied Int'l, Inc.*, 456 U.S. 212 (1982), the Court determined that a boycott of Russian goods by the International Longshoremen's Association (ILA) violated the National Labor Relations Act's ban on secondary boycotts. *Id.* at 226–27. Like A&R's boycott of

Israel and Israeli products, the boycott in *Longshoremen* was "not a labor dispute with a primary employer but a political dispute with a foreign nation." *Id.* at 224.

Most critically for purposes of A&R's claims, the Court summarily rejected the ILA's First Amendment argument, noting that the Court has "consistently rejected the claim that secondary picketing by labor unions in violation of [the NLRA] is protected activity under the First Amendment." *Id.* at 226. The Court knew that the ILA started the boycott to protest the actions of a foreign nation but that fact did not make the boycott protected by the First Amendment. Similarly, that A&R's boycott is politically motivated because of the company's views on Israel's conflict with the Palestinians does not transform the boycott from conduct into protected speech.

### E.  The law is a restriction on government speech

"When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2245 (2015) (citing *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467–68 (2009)). In *Walker*, the State of Texas was sued for allegedly violating a nonprofit organization's free speech rights by denying the organization's application to order personalized license plates with an image of the confederate flag. The Supreme Court "refused to hold that the Government unconstitutionally discriminates on the basis of viewpoint when it chooses to fund a program dedicated to advance certain permissible goals, because the program in advancing those goals necessarily discourages alternative goals." *Id.* at 2246 (quoting *Rust v. Sullivan*, 500 U.S. 173, 194 (1991)) (internal quotation marks and brackets omitted). Generally, "when the government speaks it is entitled to promote a program, to espouse a policy, or to take a position. In doing so, it represents its citizens and it carries out its duties on their behalf." *Id.*

14

Chapter 2271 espouses the State's policy of supporting Israel and takes the position that public funds will not be used to pay companies that act contrary to this policy. It does not allocate state money for a program—it limits the payment of state money to companies that are not actively engaged in efforts that undermine Texas policy. Texas has not engaged in viewpoint discrimination simply because it chooses to advance its goal of supporting Israel over alternative goals.

### F.  The law is not vague

The definition of "Boycott Israel" means "refusing to deal with, terminating business activities with, or otherwise taking any action *that is intended to penalize, inflict economic harm, or limit commercial relations specifically with Israel*[.]" Tex. Gov't Code § 808.001(1) (emphasis added). A&R argues that the definition's residual provision—"otherwise taking any action that is intended to penalize, inflict economic harm, or limit commercial relations specifically with Israel, or with a person or entity doing business in Israel or in an Israeli-controlled territory"—is vague. [Dkt. 7-2 at 12–13].

The law is not vague. Three canons of statutory construction both plausibly ascertain its meaning and show that it does not encompass protected speech. Under the *noscitur a sociis* canon "a word is known by the company it keeps," *Yates v. United States*, 574 U.S. 528, 543 (2015). The *ejusdem generis* canon teaches that "where general words follow an enumeration of specific terms, the general words are read to apply only to other items like those specifically enumerated," *United States v. Kaluza*, 780 F.3d 647, 660-61 (5th Cir. 2015). And the canon of constitutional avoidance explains that "when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018).

Applying these canons, the residual clause—taking any action that is intended to penalize, inflict economic harm, or limit commercial relations with Israel—refers to economic conduct similar to its predecessor terms "refusing to deal with" or "terminating business activities with" Israel. Thus, it covers economic conduct such as intentionally raising prices on items shipped to Israel, refusing to ship products to Israel, and similar conduct. The statute's residual clause is not vague, nor does it apply to protected speech.

### G.  The law is not overbroad

"Where conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). The substantiality of harm requirement is significant because application of the overbreadth doctrine is "strong medicine" to be "employed by the Court sparingly and only as a last resort." *Id*. at 613.

Nothing in A&R's complaint or motion remotely suggests that Chapter 2271 has a substantial likelihood of chilling protected speech. The law's "plainly legitimate sweep" concerns economic conduct only, not speech. Those companies opposed to Israel are not prohibited from protesting its policies even if they are already contracted with a state governmental entity. If A&R were to sign the contract with the City of Houston the company could still speak in protest of Israel's policies, tell others to boycott Israel, and A&R's owner and any other employees could still boycott Israel in their personal capacities. The law's impact on First Amendment rights is, therefore, purely hypothetical. But even if it were not, Chapter 2271's application to expressive conduct only, *see* Part II(c), *supra*, undercuts the substantiality of harm because that conduct may be more validly restricted. *See FAIR*, 547 U.S. at 67 (explaining the *O'Brien* intermediate scrutiny test).

### III.   A&R's harm is reparable

The foundational basis for injunctive relief is irreparable harm. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57 (1975) (injunctive relief is "a remedy whose basis 'in the federal courts has always been irreparable harm and inadequacy of legal remedies'"). "[A]n injury is 'irreparable' only if it cannot be undone through monetary remedies. Thus, the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Enterprise Int'l., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985) (cleaned up). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). *See also Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 548 (W.D. La. 2016) ("In order for a harm to be considered irreparable for purposes of issuing a preliminary injunction, monetary damages must be inadequate to redress it."); *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 694 (N.D. Tex. 2015) ("An injury is generally considered to be irreparable if the injury cannot be undone through monetary relief.").

A&R's injury is the loss of a services contract with the City of Houston. That is a classic monetary loss, and A&R requests adequate relief from this Court to redress that harm. In its Complaint, A&R seeks damages against the City of Houston "for all *economic harm* caused by the City's requirement of a 'No Boycott of Israel' in the renewal contract and [A&R]'s *resultant inability to sign the renewal contract*." [Dkt. 1 at 13] (emphasis added). In its motion, A&R shows that its injury is monetary. *See* [Dkt. 7-2 at 18] (explaining how A&R is harmed because it is "barred from resuming [its] contractual arrangement with the City of Houston," is "willing to enter into the renewal contract" and that it has "a longstanding relationship with the City of Houston").

17

A&R's prayer asks that this Court strike the Israel clause from its renewal contract, "thereby permitting the company to sign and continue providing engineering services to the City." *Id*. at 15. And in its proposed order A&R asks this Court to find irreparable harm because the company "has been and will continue to be unable to continue providing software engineering services to the City of Houston[.]" [Dkt. 7-3 at 2]. The loss of a services contract creates monetary harm adequately addressed by an award of damages.

Further, A&R's harm is not the loss of any First Amendment rights. A&R points out a well-established rule in First Amendment jurisprudence: "[T]he loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." [Dkt. 7-2 at 18] (citing and quoting *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013), and *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). From this, A&R argues that it is suffering irreparable harm because it is otherwise willing and able to sign the renewal contract but for the Israel clause, and that this harm not only warrants striking the clause from its contract with the City but also warrants "declaring [Chapter 2271] void." *Id*. That argument lacks merit.

First, as explained above, the mere act of boycotting is conduct not sufficiently expressive to warrant First Amendment protection. *See* Part II(a), *supra*. And A&R's right to speak freely and openly in protest of the State of Israel has not been curtailed by Chapter 2271. Indeed, A&R is free to attend protests, openly demonstrate, write and publicize pamphlets, and engage in various other forms of speech without running afoul of Chapter 2271's requirements. A&R has simply not lost its First Amendment freedoms.

Second, even if the First Amendment protected a boycott without accompanying explanatory speech, A&R never lost that freedom for even a second. By refusing to sign the

contract, A&R lost money in exchange for keeping the right to boycott. Had A&R signed the contract, it would have received money from the City of Houston in exchange for giving up its right to boycott. By refusing to sign, A&R has lost only money. Thus, an injunction is not appropriate relief.

## IV.    Equity does not support injunctive relief

Both the balance of equities and public interest factors favor the State. Ordinarily, these factors are analyzed separately. *See Winter*, 555 U.S. at 20. But if a state statute were enjoined, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws[,]" and the State's interest and harm "merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) and *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The public harm that would occur from enjoining the enforcement of Chapter 2271 outweighs any harm that A&R would suffer. Specifically, the harm to the State and the public that would stem from the State's inability to enforce an antidiscrimination law outweighs A&R's compensable, monetary injury. The State has deeply rooted interests in preventing national origin discrimination and promoting its relationship with an important ally. Chapter 2271 fulfills both of those purposes. The harm that would befall the State should Chapter 2271 be enjoined would drastically outweigh the benefit A&R would receive, especially when the company can be compensated with damages.

Further, the scope of injunctive relief that A&R seeks is significantly greater than necessary to redress the harm the company allegedly suffered. As explained above, A&R is adequately compensated for the loss of its contract through damages. But even if this were untrue, a statewide injunction is unnecessary. A&R's allegations raise an as-applied challenge to Chapter 2271, *see*

19

Part I, *supra*, yet the injunction would, in practice, vindicate a facial challenge even though no additional parties are before this Court seeking the same relief. *See* [Dkt. 7-2 at 19] ("[A&R] and *all government contractors* affected by [Chapter 2271] are suffering lost income due to the State's restrictions on their constitutionally-protected speech.") (emphasis added). Invalidating a law statewide when a more targeted approach is warranted—for example, an injunction tailored specifically to A&R's as applied challenge, *i.e.*, striking the Israel clause from its renewal contract only—would cause greater harm to the public interest in this instance. And in any event, as discussed in the State's motion to dismiss, A&R lacks standing to seek any type of statewide injunctive relief because that remedy will not redress its injury.

The Court should decline to award such drastic relief.

## **CONCLUSION**

For the reasons stated above the Court should deny A&R's request for a preliminary injunction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

MURTAZA F. SUTARWALLA
Deputy Attorney General for Legal Counsel

JOSHUA R. GODBEY
Division Chief
Financial Litigation and Charitable Trusts Division

*/s/ Wm. Sumner Macdaniel*
WILLIAM SUMNER MACDANIEL
Assistant Attorney General
State Bar No. 24093904
SD Bar No. 3293076
Tel: (512) 936-1862
William.Macdaniel@oag.texas.gov


CYNTHIA A. MORALES
Attorney-in-Charge
Assistant Attorney General
State Bar No. 14417420
SD Bar No. 23091
Tel: (512) 475-4470
Cynthia.Morales@oag.texas.gov

Financial Litigation and Charitable Trusts Division
Office of the Attorney General
P.O. Box 12548/Mail Stop 017
Austin, TX 78711-2548
Division Fax: (512) 477-2348

*Counsel representing Ken Paxton, In his official capacity*
*as Attorney General of Texas*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2021, the foregoing *Defendant Ken Paxton's Response to Plaintiff's Motion for Preliminary Injunction* was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>*/s/ Wm. Sumner Macdaniel*</u>
WILLIAM SUMNER MACDANIEL
Assistant Attorney General

22