IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| A & R ENGINEERING AND TESTING, INC., <br>      Plaintiff, <br> <br> v. <br> <br> CITY OF HOUSTON, and KEN PAXTON, in his official capacity as Attorney General of Texas, <br>      Defendants. | Case No. 4:21-cv-03577 |

### DEFENDANT KEN PAXTON'S REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiff A & R Engineering and Testing, Inc. suggests that the Court should simply follow other non-binding district court opinions and decide this case without evaluating it on its own arguments. *See* [Dkt. 19, at 5–6]. But it cannot follow that other district court opinions reviewing similar issues *ipso facto* require the same result. This is especially true when the law is unsettled between those decisions and no court of appeals has definitively ruled on the matter.[1] There has only been one district court opinion in Texas, but that opinion was never reviewed on the merits by the Fifth Circuit. *See Amawi v. Pflugerville Indep. Sch. Dist.*, 373 F. Supp. 3d 717 (W.D. Tex. 2019), *vacated and remanded by* 956 F.3d 816 (5th Cir. 2020).

This Court must assess the validity of the State's motion to dismiss on its own merit relative to the arguments raised by A&R. In conducting such a review, the Court will find that A&R has confused the procedural and substantive issues, conflated different legal standards, misstated the State's position, and failed to carry its burden to show standing or state a claim for relief.

---

[1] While a panel of the Eighth Circuit did rule on similar legal issues, that opinion was vacated and is currently set for rehearing en banc. *See Ark. Times LP v. Waldrip*, 988 F.3d 453 (8th Cir. 2021), *reh'g en banc granted, opinion vacated* (June 10, 2021).

## I. A&R did not address the State's standing arguments.

The State raised two distinct standing arguments in its motion to dismiss: (1) A&R lacks standing to challenge contracts that do not impact the company, and (2) A&R lacks standing specifically on two of its three claims—that Chapter 2271 is unconstitutionally vague under the Fourteenth Amendment and that the law is unconstitutionally overbroad under the First Amendment. [Dkt. 17, at 12–15]. In its response, A&R misconstrues the State's argument on these issues and assumes, incorrectly, that standing is satisfied if A&R states a valid claim for relief. *See* [Dkt. 19, at 14–15, 16–18] (arguing that A&R can make a facial challenge and obtain a statewide injunction). That is not the law.

Redressability is a core requirement for Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It requires that the remedy be tied specifically to the plaintiff's injury, not injuries suffered by others. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021). And A&R must show standing for every claim and *every form of relief* sought. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). For argument's sake, A&R's alleged harm is the loss of a single contract.[2] From this alleged harm, Plaintiff therefore has standing to seek relief that remedies only that specific harm. That is because "The Art. III judicial power exists only to redress or otherwise protect against injury *to the complaining party*." *Vt. Agency of Nat. Res v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (emphasis in original) (quotation marks omitted).

Nowhere in A&R's response does it explain how an injunction covering other government contracts remedies *the contractual harm* it has suffered for not signing its contact with the City of Houston. *See* [Dkt. 19, at 17–18] (arguing that a statewide injunction remedies harm related to

---

[2] A&R claims its harm is the inability to participate in a boycott or be compelled to speak against a boycott. [Dkt. 19, at 13–14]. This is untrue. Even if the mere participation in a boycott was protected speech—and it is not, *see* Part II—A&R is not prohibited from participating in a boycott of Israel, is not punished for participating in a boycott of Israel, and is not compelled to speak out against boycotts of Israel. The actual and only harm suffered is the loss of a government contract because A&R refused to sign it.

A&R's desire to boycott Israel). Any injunction involving other contracts is overbroad and does not specifically redress A&R's alleged injury. *See* [Dkt. 17, at 12–13]. An injunction "is overbroad if it is not narrowly tailored . . . to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (cleaned up).

Moreover, it is no defense that A&R's overbreadth claim, which permits a First Amendment challenge to a law's application to other parties not before the court, gives the company the right to seek an injunction for other parties. A&R's ability to challenge a law's application beyond itself is a different legal question than standing for injunctive relief. *See Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (every standing requirement must be clearly shown for injunctive relief).

A&R also does not adequately address the State's standing argument as to the vagueness and overbreadth challenges. Like its response to the State's standing arguments on injunctive relief, A&R conflates the standing requirement with the requirement to state a valid claim for relief. *See* [Dkt. 19, at 11–15]. Regardless of whether Chapter 2271's terms and provisions are vague and overbroad—and they are not, *see* Part III below—this Court cannot reach the question of constitutionality as to these two claims because A&R's own pleadings establish that the company lacks standing to challenge the specific provisions that it alleges are overbroad and vague.

For example, A&R's response attacks the residual clause incorporated into Chapter 2271's definition of the term "Boycott Israel," taking specific exception to the phrase "ordinary business purposes." But A&R's own verified complaint makes clear that the company desires to boycott Israel exactly as that term is defined in the first two parts of the definition of "Boycott Israel"— "refusing to deal with" Israel or "terminating business activities with" Israel—without triggering

3

the residual clause or its exception for "ordinary business purposes" *at all*. *See* [Dkt. 1 ¶¶ 19–20, 36–41] (discussing the Israeli-Palestinian conflict and A&R's position regarding that conflict). A&R is plainly covered by Chapter 2271's terms other than those found in the residual clause, so the company lacks standing to challenge that clause because there is no case or controversy regarding the issue. *See Nat'l Fed'n of the Blind of Tex. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011) (provision-by-provision approach for overbreadth challenges); *Serv. Emp. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 597 (5th Cir. 2010) (provision-by-provision approach for vagueness challenges).

In sum, A&R does not show or explain that its desire to boycott Israel is covered by the residual clause or the term "ordinary business purposes." It has put the proverbial merits cart before the standing horse. A court cannot reach the merits of a claim when a party has failed to demonstrate constitutional standing. *See Lujan*, 504 U.S. at 560–61.

## II. A&R's arguments that the law restricts speech are unavailing.

A&R asserts that *NAACP v. Claiborne Hardware Co.* controls this case and dismisses the State's reliance on *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.* (*FAIR*), and *International Longshoreman's Ass'n v. Allied International, Inc.* [Dkt. 19, at 6–8]. It further argues that Chapter 2271's certification requirement compels speech because it requires the company to endorse specific conduct and express a specific viewpoint. [Dkt. 19, at 10–11]. But A&R's arguments do not comport with First Amendment jurisprudence.

### a. *FAIR* rightly applies to the facts in this case.

*FAIR* gives the appropriate framework for evaluating when conduct is expressive enough to warrant First Amendment protection. While *FAIR* did not use the term "boycott," the facts plainly reveal that the law schools were engaged in the type of associative conduct typically associated with boycotts by refusing to engage with military recruiters. *See Rumsfeld v. FAIR*, 547

4

U.S. 41, 51–53 (2006). The law schools argued, like A&R does here, that they were compelled to support the military despite their political opposition to the military's policies. *Id*. The Supreme Court had little difficulty discerning what was speech and what was non-expressive conduct, concluding that the Solomon Amendment only regulated non-expressive conduct, because the facts showed that the law "neither limits what law schools may say nor requires them to say anything." *Id*. at 60.

      A&R ignores the reasoning in *FAIR* and directs this Court to *Claiborne* as the controlling case because *Claiborne* involved a political boycott. But A&R is far from correct that *Claiborne* "rejected [the] proposition" that it "distinguished between protected messaging and an unprotected boycott." [Dkt. 19, at 8]. The Supreme Court in *Claiborne* determined that the political boycott was protected after the facts demonstrated that the defendants were engaged in speech and expressive conduct. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982) (speech elements and the boycott "though not identical, are inseparable"). And A&R points out that *FAIR* did not overturn *Claiborne* or its progeny. [Dkt. 19, at 7–8]. Thus, the two cases must be read harmoniously—there is something consistent within these cases that controls.

      Case law reveals exactly what that is: the facts. Whether conduct is expressive enough for First Amendment protection is fact specific because conduct becomes expressive when it communicates a message that can be understood. *See, e.g.*, *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968); *Spence v. Washington*, 418 U.S. 405, 409 (1974). The Supreme Court never categorically ruled that boycotts are inherently expressive and protected, otherwise *FAIR* would have been decided differently. And *FAIR* was not the only case involving a boycott. *Longshoreman* also dealt with a boycott—a fact A&R does not dispute—yet the Supreme Court still determined

5

there was no First Amendment protection.[3] *See Int'l Longshoreman's Ass'n v. Allied Int'l, Inc.*, 456 U.S. 212, 226 (1982) (Supreme Court has "consistently rejected the claim that secondary picketing by labor unions . . . is protected activity under the First Amendment"). And in *FTC v. Superior Court Trial Lawyers Ass'n*, the Supreme Court held there was no First Amendment protection for economic boycotts designed to secure an economic advantage over competitors. 493 U.S. 411, 427–28 (1990). It is the speech and expressive conduct, not a boycott itself, that determines First Amendment protection. *See id*. at 426–27 (distinguishing *Claiborne* on the facts and noting that the Court's decision in *Claiborne* was predicated on the rights and interests the boycott sought to vindicate).

A&R's position here is like the union boycott in *Longshoreman*, and closer to the action in *FAIR* than that in *Claiborne*. There is no accompanying speech or expressive conduct conveyed by signing the certification. *See* [Dkt. 17, at 18]. Accordingly, A&R has not sufficiently pled a First Amendment violation.

### b. Certification is not compelled speech.

As a threshold matter, because A&R's prospective boycott does not involve protected speech there is nothing to compel A&R to say that violates the First Amendment. Nevertheless, A&R still cannot prevail because Chapter 2271 is a certification requirement that doesn't compel speech in the first instance.

The certification requirement serves the State's compelling interest in preventing national-origin discrimination. Refusing to do business with individuals and entities on the basis of their nationality is to discriminate on the basis of national origin. Because Chapter 2271 is a valid antidiscrimination measure, it necessarily follows that it is both viewpoint and content neutral. *See*

---

[3] A&R's attempts to distinguish *Longshoreman* further are also unavailing. Nothing in the First Amendment's text nor First Amendment jurisprudence suggests that boycotts may only be regulated if they involve labor unions. *See* [Dkt. 19, at 8].

*Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) (Title VII of the Civil Rights Act of 1964 is "an example of a permissible content-neutral regulation of conduct").

Moreover, to the extent the certification requirement concerns speech, it is a restriction on government speech. A&R wholly misconstrues the State's argument on this issue. At no point has the State argued that the First Amendment does not apply to conditions on government contracts. *See* [Dkt. 19, at 11–12]. And there is no "penalty" to A&R—the company can sign the contract or not, and it is not prohibited from engaging in boycotts of, or speaking out against, the State of Israel. *See* [Dkt. 19, at 11]. What Chapter 2271 does is prohibit the *State* from contracting with companies that boycott Israel.

This is a requirement on the State to ensure that public funds are not used to harm an important ally. Just as A&R may freely choose whom it supports and does not, the State may also choose whom it supports and does not. *See Walker v. Sons of Conferedate Veterans, Inc.*, 135 S. Ct. 2239, 2245 (2015). A&R's rationale supposes that a plaintiff, like the plaintiff in *Walker v. Sons of Confederate Veterans, Inc.*, could compel the State to publicly support a position. But *Walker* makes clear that a state has the right not to fund viewpoints it does not support, the same as a private citizen or company. *See id*. at 2245.

### III. A&R did not address nor meet its vagueness and overbreadth burdens.

Vagueness and overbreadth are two distinct legal doctrines, even under the First Amendment. But A&R makes no distinction in its response, arguing instead that *Broadrick v. Oklahoma* absolves the company from having to demonstrate that its own conduct is proscribed under Chapter 2271. *See* [Dkt. 19, at 14–15] ("But under Broadrick, an individual affected by a statute may make a facial challenge under First Amendment overbreadth and vagueness grounds."). The law says otherwise.

Vagueness is a Fourteenth Amendment challenge, while overbreadth is a First Amendment challenge. The two are similar to be sure, but they differ on one key aspect: the application of the law *to the complainant's conduct*. Vagueness requires first determining whether the law is vague as to the complainant's conduct and, if it is not, the plaintiff is foreclosed from challenging the law. *See Vill. Of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982). This is true even when the First Amendment is implicated, as was the case in *Village of Hoffman Estates*. There, the Supreme Court tackled an overbreadth and vagueness challenge to an ordinance regulating drug paraphernalia that also restricted literature on illicit drug use. *Id*. at 492–93, 496. In its review of the plaintiff's respective challenges, the Court announced the rule:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all its applications. *A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others*. A court should therefore examine the complainants conduct before analyzing other hypothetical applications of law.

*Id*. at 494–95 (emphasis added).

In contrast, overbreadth does not look at the complainant's conduct but looks, instead, to the *substantial* amount of constitutionally protected conduct a law covers. *Id*. at 494. *See also Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

A&R misstates this law and, thus, does not even contest the fact that its conduct is clearly proscribed; A&R even acknowledges as much in its response. *See* [Dkt. 19, at 10] ("[t]he provision at issue is the clause that defines 'Boycott Israel' . . . applies to A&R."). Accordingly, A&R's facial vagueness challenge fails as a matter of law.

The same is true for its overbreadth challenge. As discussed above, Chapter 2271 does not cover constitutionally protected conduct. A boycott alone is not constitutionally protected conduct.

8

S*ee* Part II, *supra*. And even if it was, overbreadth requires a showing that the law implicates a substantial amount of constitutionally protected conduct. *See Broadrick*, 413 U.S. at 613. But A&R pays lip service to this at best—it neither discusses what other protected conduct or speech would be proscribed under Chapter 2271 nor explains how Chapter 2271 punishes or chills that expression. Instead, A&R offers a single conclusory statement in its request for injunctive relief. [Dkt. 179, at 17] (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)).

But A&R's failure to adequately address and explain its ability to maintain these challenges undercuts a more serious issue in the company's lawsuit. A&R aims to invalidate the entire law and enjoin its application statewide without any meaningful argument demonstrating that the law is either vague or overbroad. The consequences for such an outcome are serious because invalidating laws statewide on threadbare recitals such as these hamper the legitimate democratic process. The Supreme Court explained the issue accordingly:

> Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of "premature interpretation of statutes on the basis of factually barebones records." Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither " 'anticipate a question of constitutional law in advance of the necessity of deciding it' " nor " 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that " '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.' "

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008) (citations omitted).

## CONCLUSION

The Court should dismiss A&R's claims with prejudice.

9

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

MURTAZA F. SUTARWALLA
Deputy Attorney General for Legal Counsel

JOSHUA R. GODBEY
Division Chief
Financial Litigation and Charitable Trusts Division

*/s/ Wm Sumner Macdaniel*
WILLIAM SUMNER MACDANIEL
Assistant Attorney General
State Bar No. 24093904
SD Bar No. 3293076
Tel: (512) 936-1862
William.Macdaniel@oag.texas.gov

CYNTHIA A. MORALES
Attorney-in-Charge
Assistant Attorney General
State Bar No. 14417420
SD Bar No. 23091
Tel: (512) 475-4470
Cynthia.Morales@oag.texas.gov

Financial Litigation and Charitable Trusts Division
Office of the Attorney General
P.O. Box 12548/Mail Stop 017
Austin, TX 78711-2548
Division Fax: (512) 477-2348

*Counsel for Ken Paxton,*
*In his official capacity as Attorney General of Texas*

## CERTIFICATE OF SERVICE

      I hereby certify that on December 15, 2021, the foregoing *Defendant Ken Paxton's Reply in Support of Motion to Dismiss* was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                  */s/ Wm. Sumner Macdaniel*
                                  WILLIAM SUMNER MACDANIEL
                                  Assistant Attorney General